**Peter D. BOAS, Appellee,**

v.

**William French SMITH, Attorney General, United States Department of Justice, Appellant.**

**UNITED STATES of America, Appellant,**

v.

**ONE NOTE AS SECURED BY DEED OF TRUST; $20,000 United States Currency, Appellees.**

**Nos. 84–1107, 84–1560.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1985.

Decided Feb. 27, 1986.

James C. Savage and Larry D. Adams, Asst. U.S. Attys. (J. Frederick Motz, U.S. Atty., Arthur C. Ferguson, Asst. U.S. Atty., and Catherine C. Blake, U.S. Atty., Baltimore, Md., on brief), for appellant.

Marvin D. Miller, Alexandria, Va., for appellee Peter Boas.

John J. Privitera (Asbill, Junkin, Myers & Buffone, Chtd., Washington, D.C., on brief), for appellee Timothy Fuller.

Before PHILLIPS and SNEEDEN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

The government appeals the district court's grants of summary judgment for

appellees Peter Boas, Timothy Fuller, and Janet McCoy in two proceedings in which the right of the government to the forfeiture of a promissory note, an automobile, and a sum of money allegedly used in a drug smuggling operation were drawn in issue.

We affirm the denial of forfeiture of the automobile and the sum of money, but we reverse the denial of forfeiture of the note.

I

These two civil forfeiture cases stem from the August 1983 convictions of Peter Boas, Timothy Fuller and Alfred Kincaid for conspiracy to import marijuana in violation of the Controlled Substances Act. *See United States v. Boas,* Criminal Case No. R–82–0053 (D.Md. August 22, 1983). Boas, Fuller, and Kincaid had conspired with undercover agents of an interagency task force of federal and state law enforcement officials to outfit a schooner "Cavale" for smuggling marijuana. The three conspirators needed working capital in order to prepare the boat for drug smuggling. Accordingly, in October of 1982, a government informant introduced to the conspirators as a possible investor in their illegal operation a Drug Enforcement Administration (DEA) agent, Robert O'Leary, using the fictitious name of "Bob Olson."

Boas and Fuller explained during the meeting that they needed $20,000 to prepare the boat. In exchange for this investment, "Olson" would receive $50,000 cash or the equivalent amount of marijuana if the marijuana were successfully imported. If the operation failed, "Olson" would be protected by a $20,000 note signed by Fuller and his wife, Janet McCoy, and collateralized by a deed of trust on their property in New Hampshire. "Olson" indicated that he needed to have his business advisor verify the legitimacy of the collateral.

Accordingly, at a later meeting, on October 29, 1982, "Olson" introduced his alleged business advisor, "Robert H. Kennedy" to Boas, Fuller, and Kincaid. In fact, "Kennedy" was the assumed name of undercover agent Robert Twigg of the FBI. At the meeting, "Kennedy" inspected the note and the documents concerning the New Hampshire property.

"Olson," "Kennedy," Boas, and Fuller held a subsequent meeting at the Annapolis Hilton Hotel on November 3, 1982. At this electronically recorded meeting, "Kennedy" produced copies of an unexecuted loan agreement and deed of trust. These documents were to be signed by Fuller and his wife before the next meeting. "Robert H. Kennedy" was the named payee in the note. Both "Olson" and "Kennedy" repeatedly advised Boas and Fuller that the note would not be filed anywhere because of its illegal nature and that it was legally unenforceable.

Before this meeting, "Olson" and "Kennedy" had watched Boas pull into the Hilton Hotel parking lot in his 1978 BMW 530i automobile. At the meeting, Boas produced a marijuana cigarette, though he did not smoke it.

The next meeting, on November 8, 1982, occurred at the Baltimore-Washington International Airport Motel. Task force officials had the meeting under electronic and visual surveillance and planned that if Boas and Fuller brought the executed note and deed of trust and exchanged these instruments for $20,000, they would be arrested and the BMW automobile seized. Eight agents were stationed outside where the arrest was to occur, and four agents were inside.

Fuller, who had claimed at the previous meeting that he needed to return to Massachusetts in order to obtain his wife's signature on the note and deed of trust, produced the signed and notarized documents.[1]

---

**1.** The notarized documents were dated November 5, 1982. It is not disputed that Fuller's wife, however, never signed the note or the deed of trust and that Fuller had forged her name on the documents. On this basis, we observe, though the point is not directly in issue, that if this be the fact, Fuller's wife's interest in the real estate covered by the deed of trust may be protectible against forfeiture, *see* 21 U.S.C.

Fuller and Boas were handed an envelope containing $20,000 in official government funds, though they did not look into or count the envelope's contents.

After the exchange of the money and documents, Boas and Fuller were arrested as they left the hotel. The documents and money were seized without warrants simultaneously with the arrest. A detective also seized the BMW automobile without a warrant.

On December 13, 1982, the government sent, by registered mail, a notice of forfeiture of the BMW to its registered owner, Mrs. Ann Boas, a Maine resident and the mother of Peter Boas. The government failed to send Boas, himself, a forfeiture notice, though the evidence established that the government was fully aware that the vehicle belonged to, and was used by, Boas.

After learning of Mrs. Boas' notice of forfeiture in mid-January 1983, counsel for Boas contacted an Assistant United States Attorney. Boas' counsel expressed his surprise that neither he nor his client received notice of the forfeiture and explained that Boas, who was claiming the vehicle as his own, intended to contest the forfeiture. Boas' counsel asked the government to allow him to oppose the forfeiture and to delay the forfeiture proceedings until termination of the pending criminal prosecution.

Six days later, on January 25, 1983, the automobile was declared forfeit by the government. The next day, the government sent Boas' counsel a letter explaining that the vehicle had already been forfeited and was being used by the DEA. The letter explained that the federal district court had no jurisdiction over the matter, even with the posting of a bond and that Boas' only remedial course lay in a Petition for Remission or Mitigation.

On February 11, 1983, Boas filed the Petition for Remission or Mitigation, but the petition was denied in March as untimely filed pursuant to 21 C.F.R. § 1316.80. On February 23, 1983, Boas filed, in No.

84–1107, an action seeking declaratory and injunctive relief. Boas sought a declaration that the seizure and forfeiture were illegal and that the forfeiture was void. He asked that the forfeiture be set aside and that an injunction issue preventing the government from continuing to use and waste his car. In March 1983, the court ordered the government to take the vehicle out of operation and to store it. The forfeiture case was then stayed pending resolution of the criminal trial.

After the August 1983 convictions of Boas, Fuller and Kincaid, Boas filed a motion for summary judgment in his pending declaratory action. The government evidently did not dispute Boas' appraisal of the BMW car as worth more than $10,000 before the lower court. Indeed, in granting summary judgment for Boas and ordering the return of his car, the court noted that "the government does not dispute the plaintiff's contention that the BMW was worth more than $10,000." Summary administrative forfeiture, therefore, the court concluded, was improper under 21 C.F.R. § 1316.77 which requires the United States Attorney to institute judicial condemnation proceedings if the appraised value of a seized item exceeds $10,000. The court also invalidated the forfeiture for violation of Boas' due process rights, as well as a finding that the government was collaterally estopped from asserting that the forfeiture was proper under 21 U.S.C. § 881(b)(4). In December 1983, the district court modified its November order, directing return of the car to Boas, remanding title to registry of the court, and directing Boas to post a bond pending appeal.

On November 28, 1983, the government filed, in No. 84–1560, a Complaint in Forfeiture for One Note Secured by Deed of Trust and for $20,000 United States Currency. Boas, Fuller, and McCoy, as well as the government, filed motions for summary judgment. The court granted the motion filed by Boas, Fuller, and McCoy and denied the government's motion. The court found that the $20,000 in currency was not

§ 881(a)(6), (7), whatever the enforceability of          the note and deed of trust against Fuller.

subject to forfeiture as it never left the government's control and that the note was "spurious," lacked consideration and value and, therefore, was also not forfeitable.

These appeals by the government followed.

## II

We look first to the validity of the automobile forfeiture. The district court concluded that the use of administrative, rather than judicial, forfeiture proceedings, as well as the denial of Boas' due process rights in failing to notify him of the pending proceedings, invalidated forfeiture of the BMW automobile. Without reaching the constitutional question, we agree that administrative forfeiture was invalid under the relevant statutes.

■ Boas' automobile was seized pursuant to the forfeiture provisions of the Controlled Substances Act, 21 U.S.C. § 881, hence pursuant to statutes and regulations governing customs forfeitures. *See* 21 U.S.C. § 881(d). Under these regulations, property whose value exceeds $10,000 must be judicially forfeited in a condemnation proceeding. On the other hand, property valued at $10,000 or less, can be summarily forfeited in an administrative proceeding. *See* 21 C.F.R. § 1316.77 (Summary Forfeiture); 21 C.F.R. § 1316.78 (Judicial Forfeiture).

The DEA instituted summary forfeiture proceedings under the assumption that the Boas automobile was valued at less than $10,000. The government now claims that the 1978 automobile's appraised value was $9,500, based principally on the car's excessive mileage and age. Yet the district court noted, in granting Boas' motion for summary judgment that the government never disputed Boas' assertion that the automobile's appraised value exceeded $10,000. Had the government desired to contest Boas' assertion of value, the summary judgment proceeding was the proper

forum for doing so. Having failed there to dispute the matter and thereby present a genuine issue of fact for resolution, it may not now do so. The government's failure to challenge the material fact of valuation in the district court, warranted that court's conclusion that judicial, not administrative forfeiture, was mandated and that the summary forfeiture was therefore void under 21 C.F.R. § 1316.77.

## III

■ We also affirm the district court's determination that the $20,000 in currency was not subject to statutory forfeiture, because the government never relinquished ownership or control of those governmental funds. Boas and Fuller, therefore, had no forfeitable interest in the currency.[2]

The $20,000 was at all times official governmental funds. "Olson"-O'Leary testified that the sum was checked out of a government facility by a government official and was immediately returned to that facility following the arrest of Boas and Fuller. Indeed, the government had Boas and Fuller under continual visual and electronic surveillance during and after the November 8, 1982, meeting. The hotel was surrounded by ten task force agents who apprehended Boas and Fuller immediately after the November 8 meeting. Based upon the district court's factual findings, the government, not Boas and Fuller, has had at all times ownership, possession, and control of the $20,000.

## IV

■ The issue of the forfeitability of the note secured by the deed of trust is troublesome. The district court found the note to be nonforfeitable because it is patently phony, lacks consideration, and is legally unenforceable. Specifically, the court ruled that the failure of consideration deprived the government of holder in due course status for purposes of enforcement of the note. The government, on the other

2. We address the issue briefly, though the government appears to have conceded it; the forfeitability of the $20,000 in U.S. Currency is not expressly raised or argued in the government's brief.

hand, argues that the issue of the value or enforceability of the *res* is not before the courts. Rather, the court's concern is only with whether the government has probable cause to forfeit the note; issues of value, failure of consideration and enforceability are determinable, if needed, only in any action seeking to enforce the note.

We agree with the government and, accordingly, reverse the judgment of the district court on this issue. Our holding, however, is expressly limited to a finding of probable cause to forfeit. We do not address the exact nature or value of the interest forfeited, whatever that may be, nor the enforceability of the note and deed of trust as forfeited.

The relevant forfeiture statute, 21 U.S.C. § 881(a), defines property subject to forfeiture to the United States. Section 881(a)(6) provides, *inter alia,* for the forfeiture of "all moneys, *negotiable instruments, and securities* used or intended to be used to facilitate any violation of this subchapter ..." (emphasis supplied). Section 881(b) then provides the methods by which the United States may obtain possession of forfeitable property. The government may either seize property "upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims ...," *id.,* or the government may seize without this process under four enumerated exceptions. The exception to the process requirement relied upon here, § 881(b)(4), provides for warrantless seizure if "the Attorney General has probable cause to believe that the property is subject to civil or criminal forfeiture under this subchapter." *Id.*

To secure forfeiture of property under § 881(a)(6) and (b)(4), the government need only establish "probable cause for belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute." *United States v. $364,960 in United States Currency,* 661 F.2d 319, 323 (5th Cir.1981); *see also United States v. United States Currency $31,828,* 760 F.2d 228 (8th Cir.1985) (the government's initial burden

is to show probable cause to believe that the property is "linked to the illegal activity"); *United States v. Kemp,* 690 F.2d 397, 401 (4th Cir.1982) ("probable cause to believe at the time of the seizure that the vehicle had been used in violation of the drug laws, and it must also be reasonable under the Fourth Amendment."). Once the government meets the showing of probable cause, the burden of proof shifts to the claimant to establish, by a preponderance of the evidence, that the property was not used in violation of the law or was not intended to be used unlawfully. *United States v. One 1975 Ford Pickup Truck,* 558 F.2d 755 (5th Cir.1977).

Applying the relevant statutes and the judicially developed probable cause test to the undisputed facts here requires the conclusion that the note was subject to forfeiture. The note secured by the deed of trust constitutes a forfeitable negotiable instrument under 21 U.S.C. § 881(a)(6). At least facially, it meets the requirements of a "negotiable instrument" under § 3–104 of the Uniform Commercial Code. The note obliges the borrowers to pay a sum certain at a time certain and to pay "on order," and the note is not conditioned by its terms.

That probable cause for seizure of this forfeitable item of property existed is also clear. The uncontroverted evidence revealed that Boas and Fuller used the note to induce agents "Olson"-O'Leary and "Kennedy"-Twigg to invest in their illegal drug smuggling venture. The facts, therefore, clearly established the requisite probable cause to believe the note bore a substantial connection to the underlying drug smuggling conspiracy of which Boas and Fuller have now been convicted.

Boas and Fuller have obviously failed to carry the burden of proving that the note was not used, nor intended to be used, in violation of the law. Instead, they have opposed the forfeiture only on the grounds of failure of consideration and illegality of the underlying agreement. These contentions, however, do not touch the narrow

probable cause issue that is dispositive of the note's forfeitability.

We therefore hold, without more, that the note was forfeitable under the relevant statutes. Whether it has any legally enforceable value as forfeit property of the United States is a question of commercial law not before us. *See United States v. Farrell*, 606 F.2d 1341 (D.C.Cir.1979).

AFFIRMED IN PART; REVERSED IN PART.

