UNITED STATES of America,
Plaintiff–Appellee,

v.

$95,945.18, UNITED STATES CURREN-
CY, Defendant–Appellant.

Appeal of Carlton Lee
BAXTER, Claimant.

No. 90–7003.

United States Court of Appeals,
Fourth Circuit.

Argued July 16, 1990.

Decided Sept. 13, 1990.

As Amended Oct. 12, 1990.

George Vernon Laughrun, II, Goodman, Carr, Nixon & Laughrun, Charlotte, N.C., for defendant-appellant.

B. Frederic Williams, Jr., Asst. U.S. Atty., argued (Thomas J. Ashcraft, U.S. Atty., Charlotte, N.C., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Claimant Carlton Lee Baxter challenges the grant of summary judgment entered by the district court permitting the forfeiture of $95,945.18 to the United States. 727 F.Supp. 242. Finding that the government had probable cause to believe that the seized cash was being used to finance a cocaine transaction, and that the claimant

has not come forward with an innocent explanation for the money's use, we affirm.

## I.

On April 27, 1988, the Charlotte, North Carolina, police department received a tip from a confidential informant that Andre King was going to meet with Andrea Jackson to exchange six kilograms of cocaine for $100,000. The police staked out the parking lot where the meeting was to take place and saw King drive into the lot and pull up next to another car. The police observed King talk briefly with the occupants of the other vehicle (who turned out to be Jackson and claimant Baxter), and then drive away. Thinking that the parked car was waiting for the drugs, undercover agent Kearney approached the vehicle and decided to initiate a drug transaction. According to Kearney, after arranging a deal for six kilograms of cocaine, Baxter gave Jackson a bowling bag containing the $95,-945.18, and Jackson handed that bag to Kearney. The Charlotte police then arrested Jackson and Baxter.

The state never prosecuted either Jackson or Baxter. Instead, the Drug Enforcement Agency (DEA) instituted administrative forfeiture proceedings for the currency and served Jackson, from whom the cash was seized, and not Baxter, who had not admitted ownership during the seizure. Baxter filed a collateral attack on the forfeiture action, at which point the government filed (by mutual stipulation) a complaint for forfeiture *in rem* in the district court.

Although not denying any of the government's factual allegations, Baxter maintained that the money "was not used, or attempted to be used to facilitate any illegal activities." After discovery by both sides, the government filed a motion for summary judgment with supporting affidavits from Officer Kearney. Baxter replied only with a request for a jury trial and a generalized denial of any wrongdoing. The district court found that Baxter had not met his Rule 56(e) obligations to come forward with specific factual disputes, and so concluded that "no genuine issue of material fact exists regarding whether the Defendant currency was used in violation of the law or was intended to be used unlawfully." Because no stay of execution was obtained and Baxter did not file a supersedeas bond, the government has deposited the money into the United States Marshals Service Asset Forfeiture Fund.

## II.

Before addressing the merits of the district court's order granting summary judgment, we must first consider the government's threshold legal argument regarding this court's jurisdiction. To borrow from Judge Friendly, "[n]ot only does logic compel initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim—but the functional difference that flows from the ground selected for dismissal likewise compels considering the jurisdiction ... questions first." *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963). *See also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 89 S.Ct. 1562, 1569, 23 L.Ed.2d 129 (1969) ("The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant.").

The government maintains that we have lost jurisdiction over the money (and thus the appeal) because the cash has been transferred to the United States Marshals Service Asset Forfeiture Fund and the claimant failed to obtain a stay of execution. The government's action here is *in rem*, so jurisdiction derives from the court's control over the *res*, the cash. Because Baxter did not obtain a stay of execution or file a supersedeas bond under Fed.R.Civ.P. 62(d),[1] and because the money is now with the Asset Forfeiture Fund, the

---

**1.** Rule 62(d) provides that "[w]hen an appeal is taken the appellant by giving a supersedeas bond may obtain a stay...." Rule 62(a) pro- vides for a 10–day automatic stay of execution from the entry of judgment.

government argues that we have lost control over the *res* and jurisdiction over the forfeiture proceedings.

At least two circuits have found that argument persuasive. *United States v. One Lear Jet Aircraft*, 836 F.2d 1571 (11th Cir.) (en banc), *cert. denied*, 487 U.S. 1204, 108 S.Ct. 2844, 101 L.Ed.2d 881 (1988); *United States v. $57,480.05 U.S. Currency And Other Coins*, 722 F.2d 1457 (9th Cir. 1984). *Cf. United States v. One 1979 Rolls Royce Corniche Convertible*, 770 F.2d 713, 717 (7th Cir.1985) (appellate court has no jurisdiction over car where district court released automobile for public auction and sale proceeds had already been deposited into U.S. Treasury). In *U.S. Currency And Other Coins*, the government brought a forfeiture action under 21 U.S.C. § 881 (the same provision at issue here) and, after the judgment of forfeiture was entered, the U.S. Attorney paid the funds into the U.S. Treasury. Because the claimant never executed a stay of the judgment, the court relied on the general rule that "[r]elease or removal of the *res* from the control of the court ended the jurisdiction of the court...." 722 F.2d at 1458.

A more thorough discussion of the jurisdictional issue was provided by the full Eleventh Circuit in *One Lear Jet*. There, the district court granted forfeiture of an airplane under 8 U.S.C. § 1324(b), and the claimant did not obtain a stay of judgment. On the claimant's appeal from the forfeiture determination, a sharply divided 6–5 court of appeals found no jurisdiction because the plane had been moved to another state. Writing for the majority, Judge Johnson found that the losing claimant to the *res* is obligated to "seek a stay of execution of the district court's judgment pending appeal, to file a supersedeas bond, or to take other action to preserve the *res*." 836 F.2d at 1574. Because the claimant failed to follow those procedures, the court concluded that it lacked *in rem* jurisdiction because the *res* was removed from the jurisdiction, and that it lacked *in personam* jurisdiction because "the action [by the government] was solely *in rem.*" *Id.* at 1577. Dissenting for five members of the court, the late Judge Vance argued that, by initiating the forfeiture proceedings in federal court, the government subjected itself to *in personam* jurisdiction over the appeal. Judge Vance called the majority's ruling a "resuscitat[ion]" of an "anachronistic and conceptually flawed rule of admiralty" (*i.e.*, that a ship is a person against whom suits can be filed), which has been "appl[ied] to a modern forfeiture action where it does not belong." 836 F.2d at 1580 (Vance, J., dissenting).

We find the dissent in *One Lear Jet* persuasive. It is true, as a general, historical matter, that in *in rem* actions, removal of the *res* ends the jurisdiction of the court, unless the removal was "accidental or fraudulent or improper." *The Rio Grande*, 90 U.S. (23 Wall.) 458, 465, 23 L.Ed. 158 (1874). That rule was based on the antediluvian approach that conceived of the ship as "the offending thing," which allowed actions only against the ship. *See* G. Gilmore & C. Black, *The Law of Admiralty* 589–94, 616 (2d ed. 1975). Such an approach, reminiscent of deodand, however, has been in decline for years, having been weakened by both the Supreme Court and lower courts. *See* 7A J. Moore & A. Palaez, *Moore's Federal Practice* ¶ E.05, at E–203 (1988) ("recent developments have somewhat clouded the conclusion that the presence of the *res* is a prerequisite to a court's subject matter jurisdiction of an *in rem* action"). In *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960), for example, the Supreme Court held that an action which had been brought *in rem* and *in personam* could be transferred on *forum non conveniens* grounds to a district where the action could not have been brought *in rem*. The Court first noted that *in rem* proceedings are based upon a fictitious personification of a vessel and that the fiction was not without its critics. Although the Court was not willing to consign the doctrine to the judicial scrap heap, it declined to "transplant this ancient, salt water admiralty fiction into the dry land context of *forum non conveniens*, where its usefulness and possibilities for good are questionable at best." 364 U.S. at 23, 80

S.Ct. at 1473. The Court further explained that "the fiction appears to have no relevance whatever in a District Court's determination of where a case can most conveniently be tried." *Id.* "A fiction," the Court concluded, "born to provide convenient forums should not be transferred into a weapon to defeat that very purpose." *Id.*

Relying in part on *Continental Grain,* several courts have departed from the traditional rule requiring the *res* to be in the jurisdiction. *See, e.g., United States v. An Article of Drug Consisting of 4,680 Pails,* 725 F.2d 976, 982 (5th Cir.1984); *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel,* 569 F.2d 330, 334 (5th Cir.1978) (*Continental Grain* suggests that "presence of the *res* within the district is not an absolute prerequisite to the court's jurisdiction"). In *An Article of Drug,* which concerned a seizure under the forfeiture component of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.,* the Fifth Circuit accepted jurisdiction over the government's appeal, despite the fact that the "defendant" drug had been released to its manufacturer by the Marshal and the government had not requested a stay of execution. Relying on *Treasure Salvors* and *Inland Credit Corp. v. M/T Bow Egret,* 552 F.2d 1148, 1152 (5th Cir.1977), which found *in personam* jurisdiction despite the removal of the *res* vessel, the court summarized its chipping away of the traditional rule: "we have dispensed with strict application of this *in rem* rule when a legal fiction which exists solely to effectuate the adjudication of disputes is invoked for the opposite purpose, [namely, the adjudication of lawsuits]." 725 F.2d at 982.

We conclude that invocation of the *in rem* rule is particularly inapposite to defeat jurisdiction in a government-initiated civil forfeiture action.[2] As noted by Judge Vance in *One Lear Jet,* "[f]orfeiture actions are unique in that they are the only proceedings where the government may confiscate private property on a mere showing of probable cause.... to [then] eliminate the right of appeal, the most important safeguard against abuse, is indeed a drastic step." 836 F.2d at 1578 (Vance, J., dissenting). Unlike the typical case where the defendant ship stealthily absconds from port and leaves the plaintiff with no *res* from which to collect, here the defendant *res* is in the possession of the United States and thus in no danger of disappearing. Because the *res* is unlikely to disappear, we see no reason to require the claimant to file a stay of execution or a supersedeas bond in a civil forfeiture action, because such bonds are typically filed to protect the interests of the party that prevailed in the district court.[3] Having prevailed below, the government, if it wins on appeal, is assured of execution regardless of whether Baxter files a bond or stays execution of the judgment.

We also agree with the dissenters in *One Lear Jet* that by initiating the forfeiture proceeding in the district court, the government has subjected itself to this court's *in personam* jurisdiction. Having submitted itself to the jurisdiction of the district court, the government should not be allowed to escape "through its subsequent jurisdictional exceptions" to the claimant's appeal. *Savas v. Maria Trading Corp.,* 285 F.2d 336, 341 (4th Cir.1960). *See also Inland Credit Corp. v. M/T Bow Egret,* 552 F.2d 1148, 1152 (5th Cir.1977) (finding personal jurisdiction over the plaintiff because plaintiff, "by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court"). In our view, the fact that the

---

**2.** In so holding, we indicate no disapproval of the rule's applicability in other contexts, especially in admiralty and in situations where one court seeks *in rem* jurisdiction over a *res* that is already under the *in rem* jurisdiction of another court. *See United States v. One 1985 Cadillac Seville,* 866 F.2d 1142, 1145 (9th Cir.1989) (federal district court should not have exercised *in rem* jurisdiction over currency where state *in rem* proceeding was pending); *United States v.*

*$79,123.49 In United States Cash & Currency,* 830 F.2d 94, 95 (7th Cir.1987) (same).

**3.** In *One Lear Jet,* the claimant maintained that he did not have the financial resources to file a supersedeas bond. The record is silent on whether Baxter possessed the resources to protect the almost $100,000 seized by the government.

seized cash is now "out of the jurisdiction" goes more to whether a judgment may be executed in favor of the claimant ultimately than to whether we can hear the appeal at all.[4] Accordingly, we decline to apply an aquatic and dated legal fiction, which traditionally was used to allow plaintiffs to recover from ships whose owners had disappeared, to defeat the appellate jurisdiction in a case that originated with a government-initiated civil forfeiture action. We now proceed to the merits of the summary judgment ruling.

## III.

■ Turning to the claimant's attack on the summary judgment order, we conclude that such a challenge must fail. The forfeiture provision of the Controlled Substances Act, 21 U.S.C. § 881(a)(6), provides for the forfeiture of "[a]ll moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance...."[5] In actions brought under this section, the government must show probable cause for the belief that a substantial connection exists between the property forfeited and the criminal activity defined by the statute. *Boas v. Smith*, 786 F.2d 605, 609 (4th Cir.1986).[6] The definition of probable cause applicable here is the same as that which applies elsewhere: "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. $364,960 In U.S. Currency*, 661 F.2d 319, 323 (5th Cir. Unit B 1981). "Under the substantial connection test, the property either must be used or intended to be used to commit a crime, or must facilitate the commission of a crime. At minimum, the property must have more than an incidental or fortuitous connection to criminal activity." *United States v. Schifferli*, 895 F.2d 987, 990 (4th Cir.1990). Once the government meets the showing of probable cause, the burden of proof shifts to the claimant to establish, by a preponderance of the evidence, that the property was not used in violation of the law or was not intended to be used unlawfully. *Boas*, 786 F.2d at 609.

Applying the judicially developed probable cause and substantial connection tests to the facts at hand, there is little doubt that the government properly met its initial burden regarding probable cause. With the help of Agent Kearney's affidavit, the government demonstrated the following in support of its motion: that undercover officer Kearney arranged a sale of six kilo-

---

**4.** In *U.S. v. $57,480.05 U.S. Currency And Other Coins*, 722 F.2d 1457 (9th Cir.1984), the court was influenced heavily by the fact that, were it to reverse the forfeiture order, "there would be no *res* upon which our mandate could operate." 722 F.2d at 1459. Because the funds had already been paid into the Treasury, the panel noted that "[a] judgment for [claimant] would require an impermissible payment of public funds not appropriated by Congress.... Enforcing a constructive trust on the Government would violate sovereign immunity in the absence of statutes or regulations clearly establishing fiduciary obligations." *Id.* (citations omitted).

We are not persuaded that a judgment for the claimant would require the creation of a constructive trust against the government. "If, for example, an agent of the United States had scooped up the cash in dispute and, without waiting for a judicial order, had run to the nearest outpost of the Treasury and deposited the money ... it would be absurd to say that only an act of Congress could restore the purloined cash to the court." *United States v. Ten Thousand Dollars In United States Currency*, 860 F.2d 1511, 1514 (9th Cir.1988). Rather, we view the reversal of a judgment of forfeiture as analogous to a suit for the refund of erroneously paid taxes or to recover for a wrongful levy. *See, e.g.*, Internal Revenue Code § 7426(a)(1); *United States v. Wingfield*, 822 F.2d 1466 (10th Cir.1987) (§ 7426(b) "grants the district court the jurisdiction to order the Government to return the seized money or its equivalent, *i.e.*, a money judgment"), *cert. dismissed*, 486 U.S. 1019, 108 S.Ct. 1762, 100 L.Ed.2d 222 (1988).

**5.** The statute also subjects to forfeiture money "traceable to such an exchange ... [or] used to facilitate any violation of this subchapter." 21 U.S.C. § 881(a)(6). The government argues in the alternative that the money seized must have come from past illegal drug dealings and is therefore subject to forfeiture whether or not it was being offered to purchase cocaine on the night of April 27. We decline to reach that issue, however, because the money clearly was being used in an attempt to purchase cocaine.

**6.** We review *de novo* the district court's determination of the existence of probable cause. *See United States v. Padilla*, 888 F.2d 642, 643 (9th Cir.1989).

grams of cocaine; that Baxter produced an exceptional amount of cash in small bills,[7] which was represented to be the consideration for the drugs, to his companion, who had arranged the sale; and that this companion gave the bills (contained in a bowling bag) to Kearney, a total stranger. Given that Baxter had little income and no bank account, and advanced no reason for why he would be carrying such a large amount of money in a bowling bag, the government has shown far more than just a probability that the cash was being used to finance a cocaine transaction. *Cf. United States v. $215,300 In U.S. Currency,* 882 F.2d 417, 419 (9th Cir.1989) ("[c]arrying a large sum of cash is 'strong evidence' [that the property was exchanged for or intended to be exchanged for drugs] even without the presence of drugs or drug paraphernalia"), *cert. denied sub nom. Arboleda v. United States,* — U.S. —, 110 S.Ct. 3242, 111 L.Ed.2d 752 (1990); *United States v. $2,500 In U.S. Currency,* 689 F.2d 10, 16 (2d Cir.1982) ($2,500 in cash "is substantially greater than is commonly kept in residential premises by law-abiding wage earners"), *cert. denied sub nom. Aponte v. United States,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984).

■ With the government having met its burden, the burden now shifts to Baxter to show that he owned the cash, and that the money was not used in violation of the law or was not intended to be used unlawfully. *Boas,* 786 F.2d at 609. In responding to the government's motion for summary judgment, Fed.R.Civ.P. 56(e) forbids the claimant to "rest upon the mere allegations or denials of the adverse party's pleading." Rather, Baxter must come forward "with specific facts showing that there is a genuine issue for trial." *Id.; see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) (the "mere scintilla of evidence ... will be insufficient").

Baxter has not set forth any facts to rebut the showing of probable cause. He has not explained adequately how someone with his income came to have almost $100,-000, much less why he had it in cash. He has not suggested a reason why he would have allowed Jackson to hand it to Kearney, a stranger. Had the claimant attacked the government's version of what happened on April 27, then he might have created a genuine issue to take to the jury.[8] But by advancing general denials of his knowledge or involvement with persons who even he admits were known drug dealers, Baxter has failed to rebut the government's case and show innocent ownership.

Accordingly, the judgment of forfeiture is

AFFIRMED.

---

7. According to Kearney's affidavit, there were 4,304 $20 bills, 977 $10 bills, 19 $5 bills, and 5 coins.

8. Baxter did provide some evidence that others had loaned him some money, but he never

explained why all this money was converted to cash, put in a bowling bag, and delivered to a stranger. Moreover, Baxter never provided affidavits from the "lenders."