UNITED STATES of America,
Plaintiff,

v.

**$57,960.00 IN UNITED STATES CURRENCY, Defendant.**

No. 7:98–2126–20AK.

United States District Court,
D. South Carolina,
Spartanburg Division.

July 28, 1999.

Marvin Caughman, Assistant United States Attorney, Columbia, SC, for Plaintiff.

David A. Babb, pro se.

## ORDER

HERLONG, District Judge.

This matter is before the court with the Report and Recommendation of United States Magistrate Judge William M. Catoe, Jr., made in accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 DSC.[1] The United States alleges that the $57,960.00 is subject to forfeiture under 21 U.S.C. § 881(a)(6). The claimant, David Anthony Babb ("Babb"), proceeding *pro se*, contends that he is the lawful owner of the subject property. A number of motions have been filed and are pending before the court. The Report and Recommendation was filed on May 28, 1999, and it recommends dismissal due to the running of the statute of limitations.[2] The United States objected to the recommendation on June 11, 1999. Babb objected to a "factual finding" in the recommendation on June 14, 1999.

### I. STATEMENT OF THE FACTS

The currency was originally seized from Babb on June 4, 1991, by officers of the Spartanburg, South Carolina Police Department when they arrested Babb in a reverse sting operation. The officers had used an informant to arrange the sale of marijuana to Babb and others for a price of $60,000.00. Babb was charged with, among other crimes, trafficking marijuana. The solicitor of the Seventh Judicial Circuit for the State of South Carolina ("Spartanburg solicitor") filed a forfeiture proceeding against the $57,960.00 that was seized from Babb.

In 1993, after Babb pled guilty to the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and was sentenced to eighty months in federal prison, the Drug Enforcement Administration ("DEA") began making efforts to adopt the state seizure for federal forfeiture proceedings. Although the Spartanburg solicitor had filed a forfeiture proceeding in 1991, he had not taken any further action on the matter. On February 19, 1993, agent William K. Lunsford ("Lunsford") of the DEA, upon approval by the Spartanburg Public Safety Department, assumed seizure of the money pursuant to 21 U.S.C. § 881. After receiving no response to attempted notices, the DEA on December 3, 1993, issued a declaration of forfeiture, which stated that the $57,960.00 was administratively forfeited pursuant to 19 U.S.C. § 1609.

### II. PROCEDURAL HISTORY

Several years passed before Babb initiated an effort to invalidate the forfeiture. Babb filed a complaint in United States District Court on May 30, 1997, claiming that his constitutional right to due process had been violated because he failed to receive adequate notice of the administrative forfeiture. *See Babb v. DEA,* No. 97–1553 (D.S.C. May 13, 1998) (order voiding administrative forfeiture), *aff'd,* 172 F.3d 862 (4th Cir.1999). On May 13, 1998, the court determined that Babb's right to due process had been violated and that the administrative forfeiture was void as a matter of law. *See id.* at 6. Accordingly, the court ordered the DEA to return the money or to commence judicial forfeiture proceedings. *See id.* at 6–7.[3]

---

1. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *See Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter to him with instructions. *See* 28 U.S.C. § 636(b)(1).

2. The magistrate judge deferred consideration of the other motions pending the outcome of his recommendation to dismiss due to the running of the limitations period.

3. An administrative forfeiture (also known as a summary forfeiture) differs from a judicial forfeiture in the following ways:

 The forfeiture procedures of the customs laws [are] set forth in 19 U.S.C. §§ 1602–1619 and implementing regulations .... The notification requirements for seizures valued at $500,000 or less are set forth in 19 U.S.C. § 1607. Under these procedures, the DEA is required to publish notice of the

On July 22, 1998, the DEA commenced judicial forfeiture proceedings, which constitutes the instant action. Rather than file an answer, Babb filed a series of motions under Rule 12(b) of the Federal Rules of Civil Procedure. The United States has responded with various motions of its own. The pending motions are as follows: (1) Babb's motion to dismiss for prejudicial delay in filing complaint in violation of due process (filed 11/16/98); (2) Babb's motion to dismiss for lack of jurisdiction due to the statute of limitations (filed 11/16/98); (3) Babb's motion to dismiss for lack of jurisdiction over the *res* (filed 11/16/98); (4) Babb's motion to stay adjudication of the foregoing motion number (3) until the Fourth Circuit has heard the direct appeal of civil action number 97–1553 (filed 11/16/98); (5) Babb's motion for leave to file reply to plaintiff's response to motions to dismiss (filed 12/18/98); (6) Babb's motion for protective order (filed 2/10/99); (7) Babb's motion to set aside order compelling the claimant to respond to interrogatories propounded by the government (filed 2/11/99); (8) United States' motion to strike (filed 2/24/99); (9) United States' motion for default judgment against Babb (filed 2/24/99); (10) United States' motion for entry of order denying Babb's motion for a protective order (filed 2/24/99); (11) Babb's motion for Rule 11 sanctions (filed 3/8/99); (12) Babb's motion to strike insufficient defense (filed 5/12/99). For the reasons outlined below, all motions (except Babb's motion to set aside an earlier order of the court) are denied.

## III. Discussion Of The Law

### A. Babb's Motions to Dismiss

Babb's motions to dismiss are without merit. Babb moves the court to dismiss the case on three bases: (1) the statute of limitations has run, (2) prejudicial delay, and (3) lack of jurisdiction over the *res*. The magistrate judge recommends that the court dismiss the case on the basis of the running of the five-year statute of limitations. The court disagrees with the magistrate judge's conclusion and rejects the recommendation.

### 1. Statute of Limitations

The applicable limitations period is five years under 19 U.S.C. § 1621. This statute also provides that the period is tolled during the absence of the person subject to the forfeiture or during any concealment or absence of the property. *See id.* The currency was seized by state government officials in 1991, transferred to the custody of the DEA on February 19, 1993, and declared administratively forfeited on December 3, 1993. Babb brought suit against the United States on May 30, 1997, in a successful effort to collaterally attack the administrative forfeiture. Babb ultimately prevailed on May 13, 1998, when this court declared the forfeiture failed to comport with due process. This ruling

seizure and intent to forfeit the seized article for at least three successive weeks, and to send written notice of the seizure and information on the applicable procedures to any person who appears to have an interest in the seized article. A person desiring to claim the seized property then has 20 days from the date of the first publication of the notice to file a claim, accompanied by a cost bond (or affidavit of indigence). If no claim is filed or bond given within this time, the property is declared forfeited to the United States and sold or otherwise disposed of according to law. This process is commonly referred to as "administrative forfeiture" and has the same force and effect as a final order of forfeiture in a judicial forfeiture proceeding in a district court.

If a claim and satisfactory bond are received within the 20 day deadline, or if the property is not subject to 19 U.S.C. § 1607 (for instance, if the value exceeds $500,-000), the DEA must transmit a report of the case to the U.S. Attorney for the judicial district in which the seizure was made for the institution of condemnation proceedings, commonly referred to as "judicial forfeiture" proceedings. Judicial forfeiture actions must be brought within five years from the date the article was seized.
*United States v. Marolf*, 973 F.Supp. 1139 (C.D.Cal.1997) (footnotes and citations omitted), *aff'd in part and rev'd in part*, 173 F.3d 1213 (9th Cir.1999).

was upheld by the Fourth Circuit on January 26, 1999. *See Babb v. DEA,* 172 F.3d 862 (4th Cir.1999) (unpublished table decision).[4] Babb also requested this court to clarify its order, which the court denied in an order filed September 25, 1998. *See Babb v. DEA,* No. 97–1553 (D.S.C. Sept. 25, 1998) (order denying motion to clarify).

Babb insists that the statute of limitations has run because even if an accrual date of February 19, 1993, is used (i.e. the date that the federal government seized the currency), the limitations period would end by February 19, 1998. The instant action was not filed until July 22, 1998. The DEA, on the other hand, argues that the limitations period should be equitably tolled. The court agrees with the DEA that the law provides for the equitable tolling of the statute, but not for the reasons set forth by the DEA. The court holds that the five-year limitations period was tolled from December 3, 1993 (when the United States filed the declaration of administrative forfeiture), until May 13, 1998 (when the court declared the administrative forfeiture to be void).

### a. Lack of Controlling Precedent

No Fourth Circuit case discusses whether judicial forfeiture proceedings may be instituted beyond the five-year limitations period of 19 U.S.C. § 1621. There are several cases outside the Fourth Circuit, however, which address this issue. In *Boero v. DEA,* 111 F.3d 301 (2d Cir.1997), an administrative forfeiture was void due to lack of notice. Although the five-year limitations period of section 1621 had passed, the Second Circuit determined the proper remedy to be a hearing on the merits in district court. *See id.* at 305, 307. This approach was adopted by the Central District of California in *United States v. Marolf,* 973 F.Supp. 1139

(C.D.Cal.1997), *aff'd in part and rev'd in part,* 173 F.3d 1213 (9th Cir.1999), yet the Ninth Circuit reversed the district court on this issue and held that "absent the application of laches or equitable tolling principles, courts may not ignore the statute of limitations simply because they opine that a given action is not stale or that a particular defendant's repose has already been broken." *Marolf,* 173 F.3d at 1218 (inner quotations omitted).[5] The Ninth Circuit took its lead from the Tenth Circuit, which concluded during the pendency of the *Marolf* appeal that "[w]here obvious statute of limitations problems exist, we think the offending [i.e. inadequately noticed] forfeiture should be vacated and the statute of limitations allowed to operate, subject, of course, to any available government arguments against it." *Clymore v. United States,* 164 F.3d 569, 574 (10th Cir.1999).

■ The court agrees with the approach of the Ninth and Tenth Circuits in *Marolf* and *Clymore.* The court already implicitly rejected the *Boero* approach when it declared the administrative forfeiture void and ordered the government either to return the property to Babb or to initiate judicial forfeiture proceedings (i.e. the court did not order a hearing on the merits as in *Boero* ). Rather, as in *Marolf* and *Clymore,* the five-year limitations period must be given an opportunity to operate. Even so, the Ninth and Tenth Circuits recognized that "government arguments," *Marolf,* 173 F.3d at 1218, such as "laches or equitable tolling principles," *Clymore,* 164 F.3d at 574, may operate against the limitations period.

### b. Equitable Tolling

■ The United States contends that equitable tolling is applicable in the instant

---

4. Babb appealed the dismissal of a defendant and the court's refusal to consider whether the DEA had jurisdiction over the currency.

5. Babb also contends in a "motion to strike an insufficient defense" that the Ninth Circuit's reversal of the district court in *Marolf* requires the court to strike the United States'

equitable tolling defense from the pleadings. This contention is ludicrous and has no basis in law. The *Marolf* decision is not controlling in this circuit. Furthermore, it is not the sole basis of the government's equitable tolling argument, as Babb claims. Thus, Babb's motion to strike the equitable tolling defense must be denied.

case. *Marolf* and *Clymore* did not consider whether equitable tolling applied in the specific situations before them, and the court is not aware of any court addressing the application of equitable tolling principles to the five-year limitations period of 19 U.S.C. § 1621. Thus, it is an issue of first impression, and the court holds that equitable tolling is appropriate.

■ The equitable tolling doctrine is read into every federal statute of limitations, and the decision whether the doctrine should be applied lies within the sole discretion of the court. *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946). It is appropriate to apply an equitable tolling principle "where consistent with congressional intent and called for by the facts of the case." *Bowen v. City of New York*, 476 U.S. 467, 479, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). The application of these two considerations demonstrates the appropriateness of equitable tolling.

First, tolling the limitations period of 19 U.S.C. § 1621 is consistent with congressional intent as demonstrated by the very language of the statute allowing the period to be tolled during the absence or concealment of the property or the person. *See* 19 U.S.C. § 1621(2) ("[T]he time of the absence from the United States of the person subject to the penalty or forfeiture, or of any concealment or absence of the property, shall not be reckoned within the 5–year period of limitation."). Although absence or concealment is not at issue in this case,[6] Congress has expressed a clear

intention to toll the statute in at least some cases. Furthermore, Congress has not expressed that it would be inappropriate to toll the period in the circumstance at hand. Thus, it cannot be said that equitable tolling is inconsistent with congressional intent. *Cf. Bowen*, 476 U.S. at 480, 106 S.Ct. 2022 (allowing equitable tolling when statute allowed tolling in some cases and the tolling at issue was "nowhere eschewed by Congress").

Second, tolling is called for by the facts of the instant case because the United States reasonably relied on the administrative forfeiture proceeding and the attempted notice to Babb. There is no evidence of dilatory tactics on the part of the United States. Although the limitations period was still running on May 30, 1997 (when Babb filed suit alleging a violation of due process),[7] the United States cannot be faulted for failing to initiate judicial forfeiture proceedings at that point. Requiring such an approach would undermine the congressional purpose underlying summary forfeiture, which is "to save the government the expense of prosecuting a judicial forfeiture." *United States v. $80,-760.00*, 781 F.Supp. 462, 465 (N.D.Tex. 1991), *aff'd*, 978 F.2d 709 (5th Cir.1992); *cf. United States v. $8,850*, 461 U.S. 555, 566, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) (reasoning in a related context that "administrative proceedings are less formal and expensive than judicial forfeiture proceedings [and that] allowing the Government to wait for action on administrative

6. The United States advances the argument that the property was "absent" because the forfeited money had been distributed to various interested parties. If so, then the United States could indefinitely toll the statute of limitations by distributing the forfeited funds and thereby cause the "absence" of the property. Such an approach would render the limitations period devoid of meaning. Thus, this argument is entirely without merit.

7. It is unclear exactly when the limitations period accrued. Assuming that the limitations period accrued in the first two months of 1993 when the federal government began

efforts to adopt the state forfeiture, the United States had until early 1998 to initiate judicial forfeiture proceedings. The text of the statute states that the period runs from "the time when the alleged offense was discovered." 19 U.S.C. § 1621. There is very little case law on this issue, but the statute clearly began to run by February 19, 1993, when the defendant currency was transferred to the United States. Because the parties have not offered any earlier accrual date, the court will consider this date as the proper accrual date for purposes of the instant motion under Rule 12(b) of the Federal Rules of Civil Procedure.

petitions eliminates unnecessary and burdensome court proceedings.").

Other courts have stressed the desirability of summary forfeiture proceedings. In *Gutt v. United States*, 641 F.Supp. 603 (W.D.Va.1986), the court interpreted the administrative forfeiture procedure of 19 U.S.C. § 1607 as allowing summary forfeiture of various items that individually were valued under the threshold value for summary proceedings yet, in the aggregate, were above it. The court stated that such an allowance was consistent with congressional intent as expressed through 1984 amendments to section 1607 that raised the property value at which administrative forfeiture is permitted from $10,000 to $100,000. *See id.* at 605. The court reasoned:

> The purpose of this and related amendments was to enhance the use of forfeiture as a law enforcement tool and to "expand the availability of efficient administrative forfeiture proceedings." Were this court to ... require the government to judicially forfeit simultaneously seized vehicles when their aggregate value exceeds $100,000, it would restrict rather than enhance the use of the administrative forfeiture mechanism. In the face of Congress' express intent to increase the use of administrative forfeiture, the court is unable to construe § 1607 as *Gutt* desires.

*Id.* (citing S.Rep. No. 98–225, at 217–18, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3374, 3400–401) (quoting *id.* at 198, *reprinted in* 1984 U.S.C.C.A.N. at 3381). Similarly, refusing to toll the limitations period in the instant case "would restrict rather than enhance the use of the administrative forfeiture mechanism." *Id.*

In sum, because tolling is consistent with congressional intent and called for by the facts of the case, the doctrine of equitable tolling applies. This conclusion is also supported by an analogous principle expressed by the Fourth Circuit in *Nealon v. Stone*, 958 F.2d 584 (4th Cir.1992). In this case, the Fourth Circuit held that a favorable EEOC decision issued during the limitations period warranted the equitable tolling of the period. *See id.* at 592–93. Thus, the plaintiff was not barred from filing suit in district court when a subsequent reconsideration by the EEOC after the running of the limitations period overturned the original ruling. *See id.* at 593.

The Fourth Circuit rejected the argument that the result should be different because the plaintiff was not required by law to file her EPA claim with the EEOC. *See id.* The *Nealon* court stated that "once she selected the EEOC to investigate her claim, the concerns of judicial economy and EEOC's administrative mandate to resolve claims of discrimination counsel that [equitable tolling during the pendency of an apparently favorable agency decision] applies here too." *Id.* The Fourth Circuit concluded that "[b]ecause she brought this suit immediately once it became clear that the administrative process in fact ruled against her, Nealon's action is not barred by the statute of limitations." *Id.* Analogously, because the United States understood that the administrative forfeiture was effective and because it filed judicial forfeiture proceedings soon after the administrative forfeiture was declared void, equitable tolling applies in the instant case.

Upon tolling the five-year period during the pendency of the administrative forfeiture, there is no question that the statute of limitations does not bar suit. Thus, it is appropriate to consider the other motions presented by the parties. The magistrate judge decided to hold his consideration of these other motions in abeyance pending the court's ruling with respect to the statute of limitations. In the interests of justice and efficiency, the court will decide the other motions without recommitting the matter to the magistrate judge.

### 2. Prejudicial Delay

 Babb next contends that the suit should be dismissed because unreasonable delay in filing judicial forfeiture proceedings violated his right to due process. *See United States v. $8,850*, 461 U.S. 555, 564–

65, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) (recognizing that unreasonable delay in filing forfeiture proceedings may violate due process and require return of the property); *United States v. Turner*, 933 F.2d 240 (4th Cir.1991) (applying *$8,850* ). "In determining whether the government brought the proceeding within a reasonable time, courts are to consider the following factors: 'length of delay, the reason for the delay, the [claimant's] assertion of his right, and prejudice to the [claimant].'" *Turner*, 933 F.2d at 246 (quoting *$8,850*, 461 U.S. at 564, 103 S.Ct. 2005 (alteration in original)). These factors dictate against a due process violation.

■ The first factor, length of delay, is the "overarching factor." *$8,850*, 461 U.S. at 565, 103 S.Ct. 2005. Babb argues that the delay should be reckoned from the time of original seizure to the time of filing judicial forfeiture proceedings—a period of over seven years. The court disagrees. The Fourth Circuit has stated that when the government was "[u]nder the impression that the [subject property] had already been forfeited, the government had no reason to initiate judicial proceedings until Turner challenged the validity of the administrative forfeiture." *Turner*, 933 F.2d at 246. Thus, the delay should be reckoned from the time of Babb's challenge. The challenge was filed on May 30, 1997. The government filed judicial forfeiture proceedings on July 22, 1998. Thus, the delay was for a total of fourteen months. The Supreme Court stated in *$8,850* that "short delays—of perhaps a month or so—need less justification than longer delays." *$8,850*, 461 U.S. at 565, 103 S.Ct. 2005. The Supreme Court found the eighteen month delay in that case to be significant. *See id.* Likewise, the court considers the instant fourteen-month delay to be a significant delay warranting substantial justification.

The second factor is the reason for delay. The Supreme Court noted in *$8,850*

that "[a]n important justification for delaying the initiation of forfeiture proceedings is to see whether the Secretary's decision on the petition for remission will obviate the need for judicial proceedings." *Id.* at 566, 103 S.Ct. 2005. Although there was no petition for remission[8] in the instant case, there was a collateral due process attack on the administrative forfeiture. Like a petition for remission, resolution of this collateral attack could have obviated the need for judicial proceedings if the government had been successful. Allowing administrative proceedings is favored because "administrative proceedings are less formal and expensive than judicial forfeiture proceedings." *Id.* Thus, the delay until May 13, 1998—when the court resolved the collateral attack and declared the administrative forfeiture void—was justified. The remaining two-month delay has not been justified, but it is insignificant and is reasonable in light of the fact that Babb's appeal of the May 13, 1998, order was not completed until January 26, 1999.

The third factor—claimant's assertion of his right—also favors a determination of reasonable delay. Babb delayed in claiming his right until May 30, 1997. It is undisputed that he did have actual notice of the administrative forfeiture in June 1995 when he requested and received the DEA's file on the forfeiture. The fact that Babb delayed bringing his claim for almost two years from that point "can be taken as some indication that [Babb] did not desire an early judicial hearing." *Id.* at 569, 103 S.Ct. 2005.

Finally, "[t]he final element is whether the claimant has been prejudiced by the delay. The primary inquiry here is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *Id.* By his own admission, Babb cannot show such prejudice. *See* (Mot. Dismiss at 6 ("Claim-

---

8. A procedure under 19 U.S.C. § 1618 in which the claimant may gain relief from the administrative forfeiture.

ant cannot identify any particular form of prejudice . . . .").) Thus, the four factors demonstrate that the delay in filing judicial forfeiture proceedings was not unreasonable and therefore did not violate Babb's right to due process.

### 3. Lack of Jurisdiction over the *Res*

■ Babb's third argument for dismissal is that the court lacks jurisdiction over the *res*.[9] Babb contends that the court does not have jurisdiction over the subject property because it was transferred to the United States by a state executive rather than by a state judicial official. He cites *Penn Gen. Cas. Co. v. Pennsylvania*, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935), and *United States v. $95,945.18*, 913 F.2d 1106, 1109 n. 2 (4th Cir.1990), for this proposition, but these cases do not support his assertions. *Pennsylvania* stands for the proposition that when a federal and a state court both assert *in rem* jurisdiction over the same property, "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *Pennsylvania*, 294 U.S. at 195, 55 S.Ct. 386. Because there is no competing proceeding in state court, this rule is inapplicable.

Neither is *$95,945.18* applicable. The Fourth Circuit held that the district court does not lose jurisdiction over the subject property in an *in rem* proceeding when the property is paid into the United States Treasury. *See $95,945.18*, 913 F.2d at 1108–09. The Fourth Circuit concluded that the general requirement of the presence of the subject property "is particularly inapposite to defeat jurisdiction in a government-initiated civil forfeiture action." *Id.* at 1109. Babb points to footnote two of the decision, which states that the general rule of the presence of the property still would apply in a situation "where one court seeks *in rem* jurisdiction over a *res* that is already under the *in rem*

jurisdiction of another court." *Id.* at n. 2. Again, this situation is not present in the instant case because there is no competing proceeding in state court. Therefore, Babb has failed to demonstrate that the court lacks *in rem* jurisdiction over the property.

### B. Babb's Motion for Leave

Babb moves for leave to file a reply to the plaintiff's response to his motions to dismiss. This motion is moot because Babb filed a reply on December 23, 1998. Furthermore, Local Rule 7.07 allows a party to reply to a response. Thus, there is no need to consider this motion.

### C. Babb's Motion for Protective Order and to Set Aside Court Order

Babb moves the court for a protective order and to set aside the court's order of January 15, 1999, compelling Babb to respond to interrogatories propounded by the government and served on October 14, 1998. Babb contends that he is not required to answer the interrogatories prior to the time of his answer. Babb has yet to file his answer because he elected to pursue 12(b) motions first. Rule 12(b) of the Federal Rules of Civil Procedure requires that "[a] motion making any of these defenses [listed in subsection (b)] shall be made before pleading if a further pleading is permitted." Fed.R.Civ.P. 12(b). Per Local Rule 26.07, Babb has until thirty days after the later of (1) filing his answer, or (2) being served with the interrogatories, in which to respond to the interrogatories. Thus, Babb has until thirty days after filing his answer to file his answers to the interrogatories.

On February 1, 1999, however, Babb served answers to the interrogatories on the United States. These answers are largely objections to providing an answer and do not satisfy the court's order of January 15, 1999. The court is willing,

---

9. Babb also moved for the court to stay consideration of this motion until after the Fourth Circuit considered his appeal of the May 13, 1998, order. Because the Fourth Circuit has already affirmed the May order,

*see Babb v. DEA*, 172 F.3d 862 (4th Cir.1999) (unpublished table decision), the motion to stay is moot, and the court will rule on the motion to dismiss for lack of jurisdiction over the *res*.

however, to set aside this order because it agrees with Babb, based on the rules outlined above, that answers to the interrogatories are not yet due. Thus, the court sets aside its order of January 15, 1999. Because the court is denying Babb's motions to dismiss, however, he is now required to file an answer within ten days of being served with the instant order. *See* Fed.R.Civ.P. 12(a)(4)(A). He is further required, in accordance with Local Rule 26.07, to serve answers to the interrogatories within thirty days of the day he serves his answer. Because of this ruling, Babb's motion for a protective order is moot.

### D. United States' Motions

The United States, on February 24, 1999, made a motion to strike the verified claim of Babb, for default judgment, and to deny the protective order. The motion to deny the protective order is moot because the motion for a protective order is moot. The motion for default is requested as a remedy for Babb's failure to respond to the interrogatories. In light of the court's ruling that Babb is not yet required to respond to the interrogatories, this motion must be denied. Finally, the motion to strike the verified claim of Babb must also be denied. The government states in its memorandum that Babb has filed the required verified claim. *See* (Mem. Supp. Mot. Strike at 4.) The government's reason to strike the verified claim involves Babb's refusal to answer the complaint or the interrogatories. *See* (*Id.*). As discussed above, Babb is not yet required to answer either the complaint or the interrogatories. Therefore, the motion to strike the verified claim is without merit.

### E. Babb's Rule 11 Motion

Babb moves for sanctions under Rule 11 on the basis that the government stated in its response to Babb's motion to dismiss for lack of jurisdiction over the *res* that "the Government sought and was granted a turn-over of the *res* from the state court . . . ." (United States' Resp. Mot. Dismiss at 4.) Babb contends that this statement is false and worthy of sanctions against the government because there was no turn-over order from the state court. Babb argues that "[c]ounsel for plaintiff must now either withdraw the statement that 'the Government sought and was granted a turn-over *order* from the state court' or produce the turn-over order." (Claimant's Mot. Rule 11 Sanctions at 4 (emphasis added).)

Babb misquotes the government's brief. The government never made reference to a turn-over *order*. It simply referred to a "turn-over." Clearly the defendant currency was turned over to the federal government, and so there is no false statement in the government's memorandum. Regardless, Babb cites cases such as *Pennsylvania* and *$95,945.18* for the proposition that a turn-over order is required, but these cases are inapplicable (as discussed in Part III.A.3 *infra*) because there is no concurrent state court proceeding. Therefore, Babb's motion is without merit and must be denied.

### F. Babb's Motion to Strike

Finally, Babb moves to strike an insufficient defense. As discussed in footnote five above, this motion is without merit.

Accordingly, it is

**ORDERED** that Babb's motion to dismiss for lack of jurisdiction due to the running of the statute of limitations is denied. It is further

**ORDERED** that Babb's motion to dismiss for prejudicial delay in filing complaint in violation of due process is denied. It is further

**ORDERED** that Babb's motion to dismiss for lack of jurisdiction over the *res* is denied. It is further

**ORDERED** that Babb's motion to stay adjudication of the foregoing motion (to dismiss for lack of jurisdiction over the *res*) is dismissed as moot. It is further

**ORDERED** that Babb's motion for leave to file reply to plaintiff's response to motions to dismiss is dismissed as moot. It is further

**ORDERED** that Babb's motion for a protective order is dismissed as moot. It is further

**ORDERED** that Babb's motion to set aside order compelling the claimant to respond to interrogatories propounded by the government is granted. It is further

**ORDERED** that the United States' motion to strike is denied. It is further

**ORDERED** that the United States' motion for default judgment against Babb is denied. It is further

**ORDERED** that the United States' motion for entry of order denying Babb's motion for a protective order is dismissed as moot. It is further

**ORDERED** that Babb's motion for Rule 11 sanctions is denied. It is further

**ORDERED** that Babb's motion to strike insufficient defense is denied.

**IT IS SO ORDERED.**

NOTICE OF RIGHT TO APPEAL

The defendant is hereby notified that he has the right to appeal this order within sixty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.