Anthony **CALABRO**, Plaintiff,

v.

**UNITED STATES of America**, Defendant.

No. 92–CV–1013.

United States District Court,
E.D. New York.

Sept. 2, 1993.

Anthony Calabro, pro se.

Zachary W. Carter, U.S. Atty. (Annemarie McAvoy, Asst. U.S. Atty., of counsel), Brooklyn, NY, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

The court approves and adopts the Report and Recommendation dated July 26, 1993 by Magistrate Judge Marilyn Dolan Go and, accordingly, awards plaintiff $7,808.24, together with interest commencing on July 27, 1993 at a rate of 9.98%.

So ordered.

## REPORT AND RECOMMENDATION

GO, United States Magistrate Judge.

Plaintiff Anthony Calabro commenced this action by letter dated February 10, 1992 to the Honorable Eugene H. Nickerson for the return of property confiscated by the defendant United States (the "Government"). Treating plaintiff's letter as a complaint and motion, Judge Nickerson referred this matter to the Magistrate Judge assigned to this case [1] for report and recommendation. For the reasons set forth below, I respectfully

---

1. The motion was originally referred to Magistrate Judge Joan M. Azrack and reassigned to the undersigned by order dated March 12, 1993.

recommend that plaintiff's application be granted.

administratively forfeited plaintiff's property on August 16, 1982.

## PROCEDURAL BACKGROUND

Plaintiff seeks the return of $3,085 which, along with some personal jewelry, was seized from him upon his arrest by the Drug Enforcement Administration (D.E.A.) on May 2, 1982. Plaintiff complains that the Government never returned the money despite four orders by Judge Nickerson beginning in 1982 to return the property. Plaintiff acknowledges that the Government did return his jewelry more than eight years later.

By order dated July 10, 1992, Judge Nickerson directed the Government to respond within twenty days to plaintiff's motion for return of property. After several extensions of time to answer,[2] the Government submitted a letter dated June 30, 1993 requesting dismissal of the claim because of plaintiff's failure to file a timely petition with D.E.A. after commencement of administrative forfeiture proceedings. The Government stated in its letter that shortly after the 1982 seizure, D.E.A. commenced administrative proceedings to forfeit the jewelry and the $3,085. According to the Government, D.E.A. sent a notice dated July 9, 1982 to plaintiff at his residence at 165 East 32nd Street, New York, New York, and published the requisite notice of the forfeiture proceedings in the New York Law Journal on July 26, 1982, August 2, 1982, and August 9, 1982.

A copy of the notice to plaintiff is attached to the Government's letter. The notice stated that the property was seized for violation of 21 U.S.C. § 881 and steps were being taken for forfeiture pursuant to 19 U.S.C. §§ 1607–1618 and pertinent regulations. The notice also advised that an administrative claim had to be filed with the D.E.A. or the United States District Court within 30 days. Because no claims were filed, D.E.A.

## DISCUSSION

On a motion to dismiss, the allegations in the complaint must be construed liberally in favor of the plaintiff, particularly where plaintiff is *pro se*, *McNeil v. United States*, —— U.S. ——, ——, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993). All well pleaded allegations must be accepted as true. *Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); *Kenevan v. Empire Blue Cross and Blue Shield*, 791 F.Supp. 75, 78 (S.D.N.Y.1992). In addition, when a question of subject matter jurisdiction is raised, a court may look beyond the face of the pleadings to consider evidence, by affidavits or otherwise, which bears upon the jurisdictional issue. *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947), *overruled on other grounds, Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *St. Clair v. City of Chico*, 880 F.2d 199 (9th Cir.), *cert. denied*, 493 U.S. 993, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989).

Although the Government correctly notes that a failure to file an administrative claim is ordinarily a non-waivable jurisdictional bar to filing suit against the Government,[3] the record does not support such a defense in this case. The Government did not deny any of the critical factual allegations in plaintiff's letter of February 10, 1992. In particular, the Government does not dispute the allegation that Judge Nickerson "ordered the D.E.A. to return my jewelry and money on four occasions beginning in 1982." Plaintiff also alleged that eight years later, the Government, in fact, returned his jewelry, but not his money. Plaintiff's undisputed allegation that Judge Nickerson had *ordered*

2. The Government did not make its first request for an extension until its letter of October 19, 1992 in which it apologized for having "inadvertently misplaced and misassigned" plaintiff's motion. It made two additional requests for an extension due to difficulty in retrieving the file which had been closed in 1982 and then for time to review the apparently massive files that had finally been located.

3. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976); *United States v. U.S. Currency in the Amount of $2,857.00*, 754 F.2d 208, 212 (7th Cir.1984); *United States v. $80,760.00 in U.S. Currency*, 781 F.Supp. 462, 465–66 (N.D.Tex.1991), *aff'd* 978 F.2d 709 (5th Cir.1992).

the property to be returned destroys the Government's reliance on any administrative forfeiture that may have taken place. The fact that the Government did return the jewelry gives additional weight to plaintiff's claim.

█ In the interest of reaching a speedy resolution of this action and not simply recommending denial of the Government's motion to dismiss, I have obtained and am taking judicial notice of the docket sheet of the prior criminal action brought against plaintiff which led to the seizure of his property. The docket sheet for CR 82–126–15, a copy of which is attached hereto, conclusively verifies plaintiff's claim. An entry dated October 24, 1983 states that "the indictment as to deft is to be dismissed & that all property seized from deft upon his arrest be released & returned to him." In light of the Government's failure to dispute plaintiff's factual claims and the facts established by the docket sheet, I conclude that plaintiff is entitled to judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Subsequent entries on the docket sheet describe the Government's belated efforts to comply with Judge Nickerson's order. An entry the following year on November 29, 1984 states: "[l]tr dtd 11/20 from AUSA Summers to EHN, re: the return of defts personal property matter has been resolved." Seven months later, an entry on June 20, 1985 records a "[l]tr. dtd. 6/18/85 from AUSA Cunningham to R. Blossner [Calabro's defense counsel] advising him to call to make arrangements to receive deft.'s property." On the basis of the Government's second letter, Judge Nickerson issued an order on June 26, 1985 dismissing Calabro's motion for return of property as moot. There is no indication on the docket sheet of what measures were then taken to arrange for receipt or delivery of the property. However, in 1990, there were two entries reflecting letters from Calabro, one dated April 20, 1990 requesting return of his property and one dated June 5, 1990 advising of his new address.

The docket entries clearly belie the Government's baseless claim in its response that plaintiff waited almost ten years before seeking return of his seized property. What is troubling in the Government's argument is that, although it managed to locate the documents relating to the D.E.A. forfeiture, it overlooks the two letters from its attorney to the Court, as well as Judge Nickerson's two orders. While this neglect may be rationalized by the existence of massive, disorganized or incomplete files, there is no excuse for the Government's failure to consider the fact that the charges against Calabro were dismissed. The Government's position is not improved by an insistence on an invalid technical defense to deprive plaintiff of his property.

Not only does the Government's tactic offend basic notions of fair play, but it also erodes public confidence rooted in the trust that governmental powers will be exercised with restraint and discretion. As courts have long recognized: "[f]orfeitures are not favored; they should be enforced only when within both the letter and spirit of the law." *United States v. One Ford Coach*, 307 U.S. 219, 227, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1939); *United States v. Giovanelli*, 998 F.2d 116, 119 (2d Cir.1993). The need for moderation in the enforcement of forfeiture laws was recently discussed by the Supreme Court in *Austin v. United States*, — U.S. —, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). The Court held that forfeitures under 21 U.S.C. § 881 are dependent on owner culpability and must be reviewed for compliance with the Eighth Amendment prohibition against excessive punishment. *Id.*, — U.S. at —, 113 S.Ct. at 2804.

The issue here is more straightforward than in *Austin*. There is no question about the "excessiveness" of plaintiff's punishment since there simply was no basis for any forfeiture once the indictment against plaintiff was dismissed. This was confirmed by Judge Nickerson's order directing the return of the property after dismissal of the indictment, which nullified the effect of the administrative forfeiture.

█ Moreover, the prior forfeiture proceedings were defective because plaintiff was never given constitutionally adequate notice.

The notice of administrative forfeiture was sent on July 13, 1982 to Calabro's residence. However, the docket sheet indicates that Calabro was in custody during July, 1982 when the notice from D.E.A. was mailed. When Calabro was arrested on May 3, 1982, bail was set at $500,000 cash or surety bond, a condition of release which was continued at arraignment on May 20, 1982. There are no entries on the docket sheet indicating that the requisite cash was deposited or a proper surety bond posted. Nor is there any other indication that Calabro was released.[4] Because he was incarcerated, Calabro could not have been at his residence when the notice from D.E.A. was delivered. The notice was thus constitutionally defective since D.E.A. knew or reasonably should have known that mailing a notice to Calabro's residence was not reasonably calculated to give actual notice of the pending administrative proceedings. *Robinson v. Hanrahan*, 409 U.S. 38, 40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972) (service in state foreclosure proceedings sent to a prisoner's last known address was not reasonably calculated to reach the prisoner when the State knew that the prisoner was not at the address); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Therefore, even had the administrative forfeiture not been superseded by Judge Nickerson's order, the forfeiture must be vacated for depriving plaintiff of his property without due process of law. *See City of New York v. New York, N.H. & H. Ry. Co.*, 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953); *Jaekel v. United States*, 304 F.Supp. 993, 999 (S.D.N.Y.1969) (forfeiture proceeding).

■ The Government's delay in returning the property after the prior criminal proceeding had been dismissed continued after commencement of this action. The Government did not respond for almost one year and failed to conduct a complete and proper investigation when responding, as was also the case in *Ajudua v. United States*, No. 92 CV 2568, slip op. at 2–3 (E.D.N.Y. April 1, 1993). As in *Ajudua*, had the Government conducted a prompt and thorough investiga-

tion, the Government would not have made the invalid claims asserted in its response and there would not have been any delay in the return of property rightly belonging to plaintiff.

The only remaining question is whether plaintiff should bear the costs of such delay. While the amount of money plaintiff seeks to recover is not substantial compared to sums involved in other forfeiture proceedings brought before this Court, the $3,085 is clearly significant to him; the value is even greater given the lapse of time involved. The plaintiff is currently in dire circumstances and states in his letter to the Court that he is unable to work, subsisting "below the poverty level, receiving $191 Social Security, and $329 from S.S.I."

Since the Second Circuit treats motions for return of property after the conclusion of criminal proceedings as being in the nature of civil equitable proceeding, *see Soviero v. United States*, 967 F.2d 791, 792–93 (2d Cir. 1992), relief available in civil cases generally should also be afforded to plaintiff here. Plaintiff's initial motion for return of property was made upon the dismissal, and hence termination, of the criminal proceedings. Judge Nickerson rendered the decision immediately and his order for the return of property was entered on the docket on October 24, 1983. The entry of Judge Nickerson's order for all practical purposes constituted the judgment of the Court in the matter and the plaintiff thus is entitled to interest on the judgment from that date pursuant to 28 U.S.C. § 1961.

Granting interest to plaintiff, an innocent owner deprived of his money, comports with similar protections afforded lienholders of property seized under Section 881. The reasoning in *In re Metmor Financial, Inc.*, 819 F.2d 446, 447 (4th Cir.1987) is equally applicable here:

[T]o the extent that "innocent" owners have a stake in such property, no forfeiture can occur. Where, as here, that stake encompasses a right to receive continuing

---

4. There is a possibility that the docket entries are incomplete and Calabro may have actually been released on bail. Even if this were the case, my

recommendation would not change in light of Judge Nickerson's prior order discussed previously.

interest payments on unpaid principal, we hold that the innocent owner is entitled to receive such payments from the government, even after the property has been seized, until the principal is repaid.

*See, also, United States v. Parcel of Real Property Known as 708–710 West 9th Street,* 715 F.Supp. 1323, 1326 (W.D.Pa.1989) ("[t]o conclude otherwise would be to allow the United States the benefit of an interest-free loan"); *United States v. Real Property Titled In the Name of Shashin, Limited,* 680 F.Supp. 332, 337 (D.Haw.1987).

There is no reason why innocent individuals who own cash taken by the Government should be treated any differently from institutional lenders who hold liens on property seized by the Government. Certainly, given the unique facts and the length of delay since this Court's original order for return of property, this Court, in the exercise of its ancillary equitable jurisdiction, should not permit the Government to extract from plaintiff the penalty of an interest free loan for almost ten years.

## CONCLUSION

I respectfully recommend that judgment be entered in favor of plaintiff in the sum of $7,808.24, consisting of the original $3,085.00 plus interest from October 24, 1983 through July 23, 1993. Plaintiff will be entitled to additional interest at the rate of $1.986 per day commencing July 27, 1993 until the date of payment.[5]

I also make the following recommendations designed to insure that the circumstances in this case are not repeated. With respect to future administrative proceedings to forfeit of property seized from an arrested person, the Government should send the notice of forfeiture proceedings to *both* the arrestee and his attorney. With respect to future Court actions for return of property, the procedures that Magistrate Judge Caden recommended in *Ajudua* should be implemented immediately.

5. In accordance with 28 U.S.C. § 1961, interest is computed at 9.98% per annum, the applicable rate at the time of entry of judgment, and compounded annually. A schedule of interest rates

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten business days after receipt of this Report and Recommendation. Failure to file objections within the specified time waives the right to appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).

SO ORDERED.

Dated: Brooklyn, New York
July 26, 1993