**UNITED STATES of America, Plaintiff,**

v.

**Gary H. MAROLF, Defendant.**

**No. SA CV 96–1185 AHS.**

United States District Court,
C.D. California,
Southern Division.

July 11, 1997.

---

Nora M. Manella, United States Attorney, Carla A. Ford, Assistant United States Attorney, Asset Forfeiture Section, Los Angeles, CA, for Plaintiff.

Shawn R. Perez, Dana Point, CA, for Defendants.

## ORDER DENYING DEFENDANT'S MOTION FOR RETURN OF SEIZED PROPERTY

STOTLER, District Judge.

### I.

### *PROCEDURAL HISTORY*

Defendant was arrested on September 16, 1991, and, on March 23, 1992, entered a guilty plea to one count of conspiracy to import approximately 900 kilograms of marijuana into the United States in violation of 21

U.S.C. § 963 (Count One of the First Superseding Information). The agreement preserved his right to appeal any adverse determination of his motions to suppress certain evidence. The Court denied defendant's motions, and the Court of Appeals affirmed this decision on June 30, 1993. On May 18, 1992, defendant was sentenced to 121 months imprisonment, four years of supervised release, and was ordered to pay a special assessment of $50.00.

On May 11, 1995, defendant filed a petition under 28 U.S.C. § 2255 seeking to vacate his sentence. The petition was denied by the Court on August 15, 1995, and the Court of Appeals affirmed on July 9, 1996.

On December 2, 1996, defendant filed the instant motion for the return of property under Fed.R.Crim.P. 41(e). The government filed its opposition to defendant's motion on February 21, 1997, and defendant filed his reply to the government's opposition on February 26, 1997. Oral argument on the motion was held on March 7, 1997. At the conclusion of the hearing on the motion, the Court ordered the parties to file supplemental briefs on the issue. Defendant's supplemental brief was filed on March 12, 1997; the government filed its opposition to defendant's supplemental brief on March 24, 1997.

## II.

### FACTUAL OVERVIEW

#### A. Forfeiture of the Vessel

On July 12, 1991, in the course of investigating defendant and his co-conspirators in a marijuana smuggling enterprise, the Drug Enforcement Administration (DEA) seized a 1981 AMAL/MANGO motor-sailboat named "Asmara" (the vessel). It is this vessel that is the subject of defendant's motion here. Following its seizure, the DEA initiated administrative forfeiture proceedings against the vessel. Consequently, public notice of the seizure was published and notice of seizure letters were sent to defendant's co-defendant, Larry Morgan. Notice was not sent to defendant.

No claims were received prior to the filing deadline, and the DEA declared the vessel forfeited to the United States on September 20, 1991. (Both parties represented during oral argument their understanding that the vessel has since been sold.) The DEA had reason to suspect, prior to the vessel's forfeiture, that the defendant may have had an interest in the vessel. On December 10, 1991, the DEA learned that the defendant was the owner of the vessel and was instructed that proper notification should be sent to him. It is uncontested that notice was never sent to defendant. The statute of limitations for the government to file judicial forfeiture proceedings against the vessel expired on July 11, 1996.

#### B. Defendant's § 2255 Motion

On May 11, 1995, defendant filed a motion pursuant to 28 U.S.C. § 2255 (" § 2255 motion") challenging his criminal conviction and sentence for conspiracy to import marijuana as unconstitutional double jeopardy in light of the prior civil forfeiture of the vessel. He stated as a second ground that "the prior forfeiture was done without due process."

The government opposed defendant's § 2255 motion, arguing, in part, that since defendant was not a party to the civil forfeiture, and he voluntarily elected not to contest it, the civil forfeiture was not prior punishment.

This Court denied defendant's motion, holding that because the forfeiture was uncontested, jeopardy did not attach to defendant. The Court also noted in its August 15, 1995, order that if, as he argued, the government did not provide proper notice of the forfeiture, defendant's remedy was to "challenge the forfeiture proceeding as invalid." The Ninth Circuit affirmed the denial of defendant's motion on July 9, 1996.

## III.

### SUMMARY OF PARTIES' POSITIONS

#### A. Defendant's Motion for Return of Seized Property

Defendant requests the Court to order the government to return to him the seized vessel, or alternatively, to pay him the value of the vessel at the time of the seizure. Defendant asserts that the Court has jurisdiction to hear the motion under Rule 41(e) of the

Federal Rules of Criminal Procedure when, as here, there are no criminal proceedings pending against the movant. *United States v. Martinson,* 809 F.2d 1364, 1366–67 (9th Cir.1987).

Defendant contends that the government failed to notify him of the forfeiture, even though he was the legal owner of the vessel and the government knew his whereabouts at all times prior to the declaration of forfeiture. Defendant argues that this lack of notice violated his due process rights under the test articulated in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Thus, according to defendant, since he was deprived of property without due process of law, the forfeiture should be set aside. *Peralta v. Heights Medical Center,* 485 U.S. 80, 86–87, 108 S.Ct. 896, 899–900, 99 L.Ed.2d 75 (1988). Pointing to *Coe v. Armour Fertilizer Works,* 237 U.S. 413, 35 S.Ct. 625, 59 L.Ed. 1027 (1915), defendant also contends that "it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense on the merits." *Id.* at 424, 35 S.Ct. at 629.

*B. Government's Opposition*

The government asserts that the doctrine of laches bars defendant's motion because his inexcusable delay in contesting the forfeiture has prejudiced them, *International Tel. & Tel. Corp. v. General Tel. & Elec. Corp.,* 518 F.2d 913, 926 (9th Cir.1975). The government concedes that the DEA failed to give defendant notice of the administrative forfeiture proceedings, but contends that defendant knew of the forfeiture (at least as of May 11, 1995, when he filed his § 2255 motion) yet did not notify the DEA of his intent to contest it. The government argues that defendant offers no reason for his delay and that the government has been prejudiced by his inaction because the statute of limitations to initiate judicial forfeiture proceedings against the vessel expired on July 11, 1996. The government further argues that had defendant raised the notice defense in May 1995, the DEA could have given proper notice, thereby allowing defendant to file a petition for remission, or a claim and cost bond in which case the matter would have

been referred to the U.S. Attorney's Office for the filing of a judicial forfeiture action, and the parties could have litigated the forfeiture issue. *Barrera–Montenegro v. United States,* 74 F.3d 657, 661 (5th Cir.1996).

The government also argues that the forfeiture should not be set aside because defendant has no defense to the forfeiture and he was, therefore, not prejudiced by the lack of notice. *United States v. Deninno,* 103 F.3d 82, 83 (10th Cir.1996). According to the government, because defendant admitted all the facts necessary to justify the forfeiture when he pleaded guilty to Count One of the First Superseding Information, he could not have been prejudiced and thus the return of the vessel is unwarranted. *See United States v. One 1970 Ford Pick–Up Truck,* 537 F.Supp. 368, 370 (N.D.Ohio 1981); *United States v. $36,125.00 United States Currency,* 510 F.Supp. 303, 308 (E.D.La.1980); *United States v. One 1973 Ford LTD,* 409 F.Supp. 741, 743 (D.Nev.1976). It is the government's position that even if defendant had received proper notice, the result would have been the same since defendant indicated in his § 2255 motion that he chose not to contest the forfeiture.

If, however, the Court decides that the lack of notice voids the administrative forfeiture, the government asserts that the proper remedy is not to return the property, but to reopen the forfeiture proceedings and allow the parties to litigate the issue. *Barrera–Montenegro,* 74 F.3d at 661. This is proper, the government argues, even though the statute of limitations has expired, because the government was prevented from filing a civil forfeiture action earlier due to a Department of Justice policy that prevented the government from filing a judicial forfeiture complaint since no claims had been filed in the administrative forfeiture proceedings.

Further, the government asserts that under *United States v. $8,850.00 United States Currency,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), any delay in pursuing the forfeiture should not be held against it. An examination of the four factors set out in that decision—(1) length of the delay; (2) reason for the delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant—

cut, according to the government, in its favor because, although the delay was admittedly substantial, the government believed that the vessel had been properly forfeited, the instant motion is defendant's first attempt to retrieve the property, and the defendant was not prejudiced by the delay because he admitted all facts necessary to justify the forfeiture.

## C. Defendant's Reply to Government's Opposition

Defendant contends that the doctrine of laches actually works against the government, rather than for them. He argues that an examination of the pleadings filed in his § 2255 motion reveals that the government knew as early as December of 1992[sic] that proper notice had not been given and, even so, it failed to re-open the forfeiture proceedings and give him proper notice. At that time the government was not precluded from doing so because the statute of Limitations had not yet run.

According to defendant, he did not delay, but instead pursued his relief from the forfeiture action by filing the § 2255 motion in May of 1995. *Boone v. Mechanical Specialties Co.,* 609 F.2d 956, 960 (9th Cir.1979). The government acknowledged then, according to defendant, that proper notice had not been given and, in fact, argued that defendant was not a party to the forfeiture because he had not filed a claim. Thus, the forfeiture issue was actually being litigated more than a year before the statute ran. Defendant also argues that the mere fact that the government might lose (presumably because of the statute of limitations problem) does not fulfill the prejudice requirement of the laches doctrine. *Wauchope v. U.S. Dept. of State,* 985 F.2d 1407 (9th Cir.1993).

Defendant disagrees with the government's reliance on the *Deninno* case and distinguishes it on the basis that the statute of limitations was not a bar in that case. Thus, argues defendant, the court "in essence . . . found in favor of the defendant on the issues of procedural default, but the statute of limitations not being at issue, ruled on the merits."

Defendant also argues that the question of whether he has a defense on the merits is immaterial under *Peralta v. Heights Medical Center,* 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988).

Defendant disputes the government's contention that the forfeiture should be re-opened and litigated on the merits. According to defendant the series of cases the government relies on for this assertion are distinguishable because in none of those cases did the statute of limitations bar the forfeiture proceedings, as it does here. Defendant also contends that an evaluation of the four factors set forth by the Supreme Court in *$8,850 United States Currency* actually weigh in his favor, primarily because the government's assertion that it believed the forfeiture to be proper "belies the facts." According to defendant, the DEA realized in December of 1992[sic] that proper notice was not given and the U.S. Attorney's Office knew the same in May of 1995 and still the government chose not to remedy the problem by serving him with proper notice prior to the expiration of the statute of limitations.

Defendant also argues that the forfeiture statutes are to be strictly construed against the government, *United States v. One 1936 Model Ford V-8 Deluxe Coach,* 307 U.S. 219, 226, 59 S.Ct. 861, 864–65, 83 L.Ed. 1249 (1939), and contends that there is no authority to support the government's argument to reopen the proceedings.

In his conclusion, defendant also requests the Court to award reasonable attorney's fees under the Equal Access to Justice Act.

## D. Defendant's Supplemental Brief in Support of Motion

The defendant first reasserts that the Court has the power to entertain the Rule 41(e) motion under *Martinson,* 809 F.2d at 1366–67, and *United States v. Clagett,* 3 F.3d 1355 (9th Cir.1993), and the power to fashion an equitable remedy even though the vessel has been sold by the government. Defendant also claims that he is entitled to interest, if any, earned by the government on the proceeds of the sale of the vessel.

Next, defendant argues that the forfeiture statutes do not impose a duty on claimants to "prevent the government from losing its

rights through carelessness." *United States v. Giovanelli*, 998 F.2d 116, 119 (2d Cir.1993). Thus, he wasn't required to remind the government that it needed to reopen the forfeiture, give him proper notice, and initiate judicial forfeiture proceedings. The defendant also asserts that under *Calabro v. United States*, 830 F.Supp. 175 (E.D.N.Y.1993), the forfeiture must be vacated for the due process violation.

Finally, although conceding that his request for attorney's fees is premature, defendant argues that he is entitled to fees and costs under the Equal Access to Justice Act since the government's position in defending the failure to give notice is not substantially justified.

### E. Government's Opposition to Defendant's Supplemental Brief

First, the government argues that it does not challenge the district court's jurisdiction to hear the motion and to order an appropriate remedy if the motion is granted.

However, the government argues that procedural due process rules are designed to prevent against erroneous deprivations of life, Liberty, or property, not deprivations per se. *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978). Under *Carey*, the government contends, the proper remedy for a due process violation is a nominal sum, not to exceed $1.00, unless the other party can demonstrate that the deprivation was unjustified on the merits. According to the government, the defendant would have to show that the outcome in this case would have been different had timely notice been given—in other words, that the seizure was not justified as a matter of law. In the government's view, defendant cannot make this demonstration because, first, the Court made the specific finding of fact that law enforcement personnel had probable cause to believe the vessel had been used to transport the marijuana seized in the case, and second, because defendant admitted the facts necessary for the forfeiture under the statute when he pleaded guilty, admitting that he was captain of the vessel which transported the marijuana into the United States. The government also notes, again, that defendant admitted in his § 2255 motion that he would not have contested the forfeiture

even if he had been given proper notice. The government argues that, although *Carey* and the cited Ninth Circuit cases adhering to it, *Raditch v. United States*, 929 F.2d 478, 481 n. 5 (9th Cir.1991) and *Scofield v. City of Hillsborough*, 862 F.2d 759 (9th Cir.1988), involve attempts to recover for procedural due process violations under 42 U.S.C. § 1983, the principles apply with equal force here.

The government disputes defendant's argument that he had no duty to protect the government's rights by notifying them that he had not received proper notice of the forfeiture by distinguishing the two primary cases relied on by the defendant. Specifically, the government argues that in *Giovanelli* it was not established that Giovanelli had actual notice of the forfeiture of his property and the Second Circuit was thus not convinced that the claimant knew that he should act to protect his rights. In contrast, in this case it was clear that defendant knew the property had been forfeited when he filed his § 2255 Motion to Vacate Sentence. At that time, the defendant still had 14 months where he could have notified the DEA and the agency could have corrected the infringement before the statute ran. Further, in *Giovanelli*, the government did not challenge claimant's right to recover the money; here, the government challenges defendant's right to recover the vessel on the merits. Finally, the government asserts that the Second Circuit erred in not considering the binding precedent set forth in *Carey* regarding the remedy of nominal damages only.

The government also distinguishes *Calabro* on its facts—stating that the case is inapposite because there the district court had previously ordered the government to return the property to the defendant, and the court determined that the government could not rely on an administrative forfeiture to avoid doing so. Here, there is no such previous order.

The government further argues that defendant abandoned his right to challenge the forfeiture when he consciously chose not to contest the administrative forfeiture as he stated in his § 2255 motion. Thus, says the government, defendant cannot now complain

of a due process violation after waiving his right to participate in the administrative forfeiture proceedings.

The government also argues that if the Court finds that the government cannot rely on a laches defense in this case, it would never be available to do so in a forfeiture proceeding, or in any other case in which the government is found to have committed a due process violation. According to the government, the laches defense is available to any party where another party's unexcused or unreasonable delay has prejudiced his adversary.

If the Court decides to entertain defendant's request for attorney's fees (although the government agrees that it is premature), the government contends that attorney's fees are not appropriate because its position is substantially justified—that is, under Ninth Circuit standards, the government's case has a reasonable basis in law and fact, considering the totality of the circumstances.

## IV.

### *DISCUSSION*

#### A. *Does the Court have Jurisdiction to Hear Defendant's Motion?*

▮ The authority of the Court to hear defendant's motion for return of property under Fed.R.Crim.P. 41(e) and, if granted, to order appropriate relief is unchallenged by the parties. District courts have broad jurisdiction to entertain collateral due process attacks on administrative forfeitures. *United States v. Martinson*, 809 F.2d 1364, 1366–67 (9th Cir.1987) (district court Las jurisdiction to hear motions to return property seized by the government when there are no criminal proceedings pending against the movant). *See also United States v. Clagett*, 3 F.3d 1355, 1356 (9th Cir.1993) (if notice to defendant of the pending administrative forfeiture was inadequate, that proceeding was "never available to him in any meaningful sense" and he is thus entitled to a ruling on his claim of inadequate notice); *Marshall Leasing, Inc. v. United States*, 893 F.2d 1096, 1102–03 (9th Cir.1990) (district court had jur-

isdiction over due process attack on forfeiture under 28 U.S.C. § 1331). Courts in other circuits have also addressed this question. *See United States v. Garcia*, 65 F.3d 17 (4th Cir.1995); *United States v. Giraldo*, 45 F.3d 509, 510 (1st Cir.1995); *United States v. Woodall*, 12 F.3d 791, 793 (8th Cir.1993); *Willis v. United States*, 787 F.2d 1089, 1093 (7th Cir.1986).

The Court of Appeals for the Ninth Circuit has held that motions to return seized property, although fashioned under Fed. R.Crim.P. 41(e), are to be treated as "civil equitable proceedings" when there are no criminal proceedings pending against the movant. *Martinson*, 809 F.2d at 1367. *See also Onwubiko v. United States*, 969 F.2d 1392, 1397 (2d Cir.1992) ("[w]here criminal proceedings against the movant have already been completed, a district court should treat a rule 41(e) motion as a civil complaint"). Defendant Marolf is currently serving his sentence for conviction in the underlying criminal case. All appeals have been exhausted and his motion to vacate his sentence in light of the forfeiture of the vessel has been concluded. Thus it is appropriate for the Court to rule on defendant's Rule 41(e) motion and treat it as a civil equitable proceeding.

The fact that the vessel is no longer available to be returned [1] does not defeat this Court's ability to effect an equitable remedy. *Martinson*, 809 F.2d at 1367. "It is the historic purpose of equity to secure complete justice. The courts will be alert to adjust their remedies so as to grant the necessary relief." *Id.* at 1367 (quoting *EEOC v. General Tel. Co.*, 599 F.2d 322, 334 (9th Cir.1979)); *Soviero v. United States*, 967 F.2d 791, 792–93 (2d Cir.1992) (case not moot where property has been destroyed because equitable jurisdiction of the court gives it ability to fashion appropriate relief).

#### B. *Summary of Applicable Forfeiture Procedures*

There are over 100 forfeiture statutes in the United States Code. Judith Secher, *Asset*

---

**1.** During oral argument on the motion, both parties stated their understanding that the vessel has been sold by the government. To date, no infor-

mation has yet been filed with the court indicating the date of the sale, nor the amount received from the sale.

*Forfeiture: Practice & Procedure* (1995). The procedures that govern in a particular instance are necessarily dependant on the statute under which the forfeiture is predicated, and can vary significantly.[2] In some instances, the procedural mechanism is set forth directly in the Act that authorizes the forfeiture[3]; in others, the statute requires that forfeitures are to be carried out in the manner set forth in some other statute or set of regulations.[4] In still others, no particular procedure is identified.[5] To complicate matters further, some laws authorize both civil and criminal forfeitures.[6]

In this case, DEA records show that the vessel was seized on July 12, 1991, pursuant to 21 U.S.C. § 841(a)(1)[7] and was forfeited to the United States on September 20, 1991, pursuant to 21 U.S.C. § 881.[8] Section 881(d) requires that the customs laws relating to the seizure and forfeiture of property be applied to seizures of property under this section, and the duties assigned in those laws to the customs officer are instead delegated to persons authorized or designated for such purposes by the Attorney General.

The forfeiture procedures of the customs laws (set forth in 19 U.S.C. §§ 1602–1619 and implementing regulations) thus governed the proceedings to be followed with respect to the seizure of the vessel Asmara. The notification requirements for seizures valued at $500,000 or less[9] are set forth in 19 U.S.C. § 1607. Under these procedures, the DEA is required to publish notice of the seizure and intent to forfeit the seized article for at least three successive weeks, and to send written notice of the seizure and information on the applicable procedures to any person who appears to have an interest in the seized article. 19 U.S.C. § 1607(a). A person desiring to claim the seized property then has 20 days from the date of the first publication of the notice to file a claim, accompanied by a cost bond (or affidavit of indigence). If no claim is filed or bond given within this time, the property is declared forfeited to the United States and sold or otherwise disposed of according to law. 19 U.S.C. § 1609(a).

2. Congress is currently considering legislation, H.R.1965, 105th Cong. (1997), which would reform civil asset forfeiture law and establish, to some extent, uniform procedures for civil forfeiture proceedings.

3. *See, e.g.,* 18 U.S.C. § 1963 (criminal forfeiture for property used, or obtained, in connection with a Racketeer Influenced or Corrupt Organization (RICO)).

4. For example, property seized pursuant to 18 U.S.C. § 981 (money laundering offenses) is to be forfeited in the same manner as outlined in 21 U.S.C. § 881 (civil forfeiture procedures for violation of the Controlled Substances Act) which, in turn, requires that forfeitures are to be carried out according to the relevant provisions of the customs laws. 21 U.S.C. § 881(d).

5. For example, 7 U.S.C. § 608(a)(5) (exceeding agricultural quotas fixed by the Secretary) provides only that the amount forfeitable shall be recoverable in a "civil suit brought in the name of the United States."

6. For example, 21 U.S.C. § 853 authorizes criminal forfeiture of proceeds or property used in or derived from a felony drug violation; 21 U.S.C. § 881, as noted in footnote 4, authorizes civil forfeitures for drug violations.

There are important distinctions between civil and criminal forfeiture proceedings. For example, in civil forfeitures, the action is in rem—against the property itself; criminal forfeitures, on the other hand, are in personam—against a person. Criminal forfeiture proceedings are conducted as part of a criminal case and require a separate count in the indictment listing the property to be forfeited upon conviction, a separate verdict forfeiting the property, and an ancillary hearing after forfeiture to resolve third party interests in the forfeited property. In contrast, a civil forfeiture does not depend on the success or failure of the criminal prosecution. Civil forfeitures require a demonstration of probable cause to believe that the property is forfeitable under a specific federal statute. Persons with an interest in the property are entitled to contest the forfeiture under various procedural mechanisms, depending on the underlying statute.

7. 21 U.S.C. § 841(a)(1) makes it unlawful to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance, except as specifically authorized.

8. 21 U.S.C. § 881(a)(4) subjects to forfeiture conveyances, including vessels, which are "used or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment" of controlled substances in violation of law.

9. The appraised retail value of the Asmara was $240,000. Defendant's Motion, Exhibit 3 (DEA FORM 453).

This process is commonly referred to as "administrative forfeiture" and has the same force and effect as a final order of forfeiture in a judicial forfeiture proceeding in a district court. 19 U.S.C. § 1609(b).

If a claim and satisfactory bond are received within the 20 day deadline, or if the property is not subject to 19 U.S.C. § 1607 (for instance, if the value exceeds $500,000), the DEA must transmit a report of the case to the U.S. Attorney for the judicial district in which the seizure was made for the institution of condemnation proceedings, commonly referred to as "judicial forfeiture" proceedings. Judicial forfeiture actions must be brought within five years from the date the article was seized. 19 U.S.C. § 1619.

A person with an interest in the seized property may also, or instead, file a petition for remission or mitigation of the forfeiture, which does not require a bond. 19 U.S.C. § 1618. The petition should be filed within 30 days of the receipt of the notice of seizure letter. 21 C.F.R. § 1316.80. Once the property has been sold, however, a petition for remission or mitigation cannot be accepted. 19 U.S.C. § 1618.[10] The relevant official [11] has the authority to remit or mitigate the forfeiture "upon such terms as he deems reasonable and just." 19 U.S.C. § 1618. If a petition is denied, one request for reconsideration is permitted. 28 C.F.R. §§ 9.3–9.4.

How, then, were these procedures applied in the case of the seizure of the vessel Asmara? After the vessel was seized on July 12, 1991, a forfeiture report was prepared by the DEA field office and transmitted to the DEA Office of Chief Counsel, Asset Forfeiture Section ("OCC"). The OCC reviewed the report and determined that there was adequate information to support administrative forfeiture proceedings against the vessel. Consequently, OCC sent two notice of seizure letters to Larry Morgan, defendant's co-defendant, indicating the first date of publication of notice and providing information regarding the procedures for challenging the forfeiture. One of these letters was sent to the marina where the vessel was seized. Signed postal receipts indicate that the letters were received. Notice was published in *USA Today* for three successive weeks, beginning August 14, 1991. No claim was filed and OCC declared the property forfeited on September 20, 1991.

According to OCC, a notice of seizure letter was not sent to defendant Marolf because the initial forfeiture report did not list him as the owner and OCC did not have any independent knowledge of his interest in the vessel. However, according to the government's own papers, "[I]n mid-July 1991, the DEA became aware that defendant Marolf may have had an interest in the vessel as the captain or the owner." Plaintiff's Opposition, Declaration of Special Agent Eldridge at ¶ 12. On December 10, 1991, OCC was advised that defendant Marolf owned the Asmara and should be notified. For reasons that remain unexplained, the defendant was not subsequently notified. He did not at any time file a claim and bond or petition for remission/mitigation of the forfeiture. Indeed, there is no indication of any communication by the defendant regarding the status of the seized vessel prior to the filing of his § 2255 motion in 1995.

### C. Did the Forfeiture of the Vessel without Notice to Defendant Violate Due Process?

To be constitutionally adequate, notice "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" is required before property rights are disturbed. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The applicable statute in this case requires notification of anyone who "appears to have an interest" in the seized property. 19 U.S.C. § 1607. The

---

10. But, the interpreting regulations do permit a petition for restoration of proceeds of sale or for the value of the property. This petition must be filed within 90 days of the sale. 21 C.F.R. § 1316.80.

11. In the case of property seized by the DEA and subject to administrative forfeiture, this is the Administrator of the DEA (or designee). 28 C.F.R. § 9.3; 21 C.F.R. § 1316.79. If the property is subject to judicial forfeiture, it is the Attorney General, or designee. 28 C.F.R. § 9.4; 21 C.F.R. § 1316.79.

government indisputably was required to notify defendant at least as of December 1991 when it was determined with certainty that he was the owner of the seized vessel, and probably even as early as July 1991, if, as indicated, the DEA field office had reason to believe that he may have held an interest in the vessel.

The government concedes that it erred in not giving the defendant notice of the seizure and intent to forfeit the vessel. The Court agrees and finds that, under *Mullane,* this lack of notice violated due process.

### D. Is the Motion Nevertheless Barred by Laches?

■■■■ The government argues, however, that the doctrine of laches defeats defendant's motion regardless of the notice defect. Laches is an equitable time limitation that bars a party's right to bring suit where the party's unexcused or unreasonable delay in asserting a known right has prejudiced the other party. *Boone v. Mechanical Specialties Co.,* 609 F.2d 956, 958 (9th Cir.1979) (citing *International Tel. & Tel. Corp. v. General Tel. & Elec. Corp.,* 518 F.2d 913, 926 (9th Cir.1975)).

#### 1. Did Defendant Inexcusably Delay in Asserting His Claim to the Vessel?

Defendant does not tell us when he received actual knowledge that the vessel had been seized, but it is clear that he knew at least by May 11, 1995, when he filed his § 2255 motion. It is the delay between this date and December 2, 1996, when he filed the instant motion, that the government contends was unreasonable and unexcused. It is not readily apparent what action defendant should have taken during this time to contest the completed forfeiture. By May of 1995, the time had long since expired for him to be able to file a claim or a petition for remission or mitigation under the administrative procedures described above. The government ar-

gues in its papers only that defendant should have "notified" the DEA of his intent to challenge the forfeiture.

At oral argument, the government argued that what defendant should have done was file his Rule 41(e) motion earlier. Defendant, however, contends that although he didn't file a Rule 41(e) motion, he did not delay because he was, in fact, litigating the forfeiture issue by way of his § 2255 motion. This argument is unconvincing. Although defendant did claim in his § 2255 motion that the vessel had been forfeited without proper notice to him (he noted that "because he did not receive notice of the seizure he did not file a claim" and that "he was not afforded due process by the failure of the government to notice either a judicial or administrative forfeiture of the vessel"), he nevertheless did not request the Court to void the forfeiture and return the vessel. Instead, he asked the Court to vacate his criminal conviction and sentence on double jeopardy grounds based on the prior forfeiture. For obvious reasons, he, at that time, wanted the forfeiture to stand.[12]

An accounting must also be made for the time that elapsed between the ruling on his § 2255 motion and the filing of this Rule 41(e) motion. This Court denied defendant's § 2255 motion on August 15, 1995, finding that jeopardy did not attach because the prior forfeiture was uncontested and instructing defendant that if he did not receive proper notice of the forfeiture, his remedy was to challenge that proceeding as invalid. Still, defendant waited another 15 months before filing the instant motion.[13]

#### 2. Did Defendant's Delay Prejudice the Government?

It is not necessary to decide whether this delay was unreasonable, however, because in order to prevail on a laches defense, the

---

**12.** It is clear that the state of the law in the Ninth Circuit at the time due to the decision in *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994) (holding that a civil forfeiture action could be considered prior punishment for purposes of the double jeopardy clause), *rev'd by United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), influenced the strategic decisions of both parties in this matter.

**13.** It is true that defendant's appeal of the district court denial was not resolved by the Court of Appeals until July 9, 1996, approximately five months before defendant filed the instant motion, and only two days before the statute of limitations for filing judicial forfeiture proceedings ran against the government.

government must also demonstrate that the defendant's delay prejudiced the government. *Wauchope v. U.S. Dept. of State*, 985 F.2d 1407 (9th Cir.1993). This showing has not been met. Although the government is undoubtedly prejudiced by the fact that the statute of limitations now precludes it from filing judicial forfeiture proceedings, it was not defendant's delay so much as the government's own carelessness that precipitated this state of affairs. *Id.* at 1411 (mere possibility that the other party might lose does not suffice to warrant imposition of laches). The DEA knew as long ago as mid-July 1991 that the defendant may have had an interest in the vessel. Then, in December of 1991, the OCC was informed directly that defendant was the owner of the vessel and should be properly notified. He was not. Finally, when defendant filed his § 2255 motion, the government was again reminded that the vessel had been forfeited in violation of defendant's due process rights and, still, it took no action to remedy the situation. The government could easily have done so.

These factors lead the Court to conclude that defendant's claim was hardly a "sleeping claim," as was the case in *Boone v. Mechanical Specialties Co.*, 609 F.2d 956 (9th Cir. 1979). There, the Ninth Circuit held that plaintiff's Title VII action was barred by laches because he waited almost seven years before bringing suit, even though the EEOC repeatedly informed him that he could have a "right—to-sue" letter and bring an action earlier. The court found that the defendant was severely prejudiced by this delay because witnesses were no longer available to testify. The court noted in particular "the absence of any type of continuing administrative proceedings" that would have put defendant on notice that they should prepare for a lawsuit. *Id.* at 959.

Although defendant Marolf delayed in filing his Rule 41(e) motion, perhaps even purposefully waiting until after the statute had run, it was not his duty "to prevent the government from losing its rights due to carelessness." *United States v. Giovanelli*, 998 F.2d 116 (2d Cir.1993) The holding in

*Giovanelli* is persuasive here. In that case, the FBI seized and forfeited $471,600 in connection with a RICO charge against defendant. Defendant brought a Rule 41(e) motion for return of the currency several months after the 5–year statute of limitations had run. The district court found that the government's notice of the seizure was indeed defective (notice was sent to defendant in prison when he was actually living at home on bail, and it was not published three times as required), but it denied defendant's motion based on equitable considerations. According to the district court, the testimony of an FBI agent at defendant's criminal trial gave him actual notice that the government believed the money had been forfeited. Yet, defendant delayed bringing his claim earlier and this operated to the detriment of the government.

The Court of Appeals reversed, stating "we cannot agree with [the district court] that the defendant was in some way estopped from making his Rule 41(e) motion by his having withheld it until the statute of limitations had run against the government despite his 'actual notice' of the government's belief that it had instituted forfeiture proceedings." *Id.* at 118. The government's attempt to distinguish the case on the basis that in *Giovanelli* the Court of Appeals was not convinced that defendant had actually received notice of the forfeiture is misguided. Indeed, the Second Circuit found that even if it was assumed that the FBI agent's testimony gave defendant notice of the forfeiture "such notice would have availed the government nothing. The forfeiture statutes give the government vast and important powers, but they must be exercised in the precise manner the statutes provide." *Id.* (citing *United States v. One 1936 Model Ford V-8 Deluxe Coach*, 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1939)). The Court agrees with the Second Circuit's characterization of the forfeiture statutes and finds that the laches defense must fail.[14]

14. The Court does not agree with the government's assertion, first raised in its opposition to defendant's supplemental brief, that if the government cannot rely on a laches defense here "it will never be available to do so in a forfeiture case." The ruling here is simply that the government *in this case* has not met the requirements necessary to establish a laches defense.

*E. Need the Defendant have been Prejudiced by the Due Process Violation in Order to Succeed on his Motion?*

 The government contends that the forfeiture should stand regardless of the notice defect because defendant was not prejudiced by the due process violation. *United States v. Deninno,* 103 F.3d 82 (10th Cir. 1996). It argues that since defendant admitted all of the facts necessary to justify the forfeiture when he pleaded guilty to Count One of the First Superseding Information, and he has not offered any reason why the vessel is not subject to forfeiture, he has not been prejudiced by the lack of notice. In *Deninno,* the court found that the alleged due process violation (failure to provide access to writing materials and postage to contest the forfeiture) was irrelevant because the claimant failed to offer any reason why the property at issue was not subject to forfeiture. However, it is significant that the statute of limitations was not at issue in *Deninno* as is the situation here: "Upsetting the forfeitures because of the alleged procedural faults, when Mr. Deninno appears to have no basis for the return of the property *once the faults are remedied in new proceedings,* would serve no purpose other than to waste limited judicial resources." *Id.* at 86 (emphasis added). In the case at bar, the question is whether the faults can be remedied in new proceedings because of the statute of limitations, a problem not evident in *Deninno.*

 More importantly, the Supreme Court has ruled that a meritorious defense is not necessary. *Peralta v. Heights Medical Center,* 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988). In that case, the Supreme Court found "plainly infirm" (by reason of the Due Process Clause) a default judgment that had been entered without proper notice. "When a person has been deprived of property in a manner contrary to the most basic tenets of due process, 'it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits.'" *Id.* at 86–87, 108 S.Ct. at 900 (citing *Coe v. Armour Fertilizer Works,* 237 U.S. 413, 424, 35 S.Ct. 625, 629, 59 L.Ed. 1027 (1915)).

The Second Circuit has recently held that the ability of a claimant to content a forfeiture in district court does "not depend on any findings concerning the existence of a colorable claim to the property." *Boero v. Drug Enforcement Administration,* 111 F.3d 301, 306 (2d Cir.1997) (discussing *Onwubiko v. United States,* 969 F.2d 1392, 1398 (2d Cir. 1992) and *Torres v. $36,256.80 United States Currency,* 25 F.3d 1154, 1155 (2d Cir.1994)). In *Boero,* the court also stressed that the claimant could not be "expected or required to demonstrate a meritorious claim at this stage because the DEA bears the initial burden of proof in a forfeiture proceeding." *Id.* at 306 (citing *United States v. Two Parcels of Property Located at 19 and 25 Castle Street,* 31 F.3d 35, 39 (2d Cir.1994)).

Finally, the government makes much of the fact that in a footnote to his § 2255 motion, defendant states that he was advised by counsel not to contest the forfeiture action because of a concern that through the discovery process in the civil forfeiture action his Fifth Amendment rights against self-incrimination could be circumvented. According to the reasoning of the government, then, the forfeiture should stand because defendant would not have contested it even if proper notice had been given. This is entirely speculative. The bottom line is that it is unknown whether defendant would have filed a claim or not had he been properly notified— because he wasn't.

*F. What is the Remedy to be Granted for a Due Process Violation in an Administrative Forfeiture Action if the Statute of Limitations for Filing a Judicial Forfeiture Action has Expired?*

 The government asserts that the proper relief to be granted is to reopen the forfeiture proceedings and litigate the forfeiture on the merits, regardless of the statute of limitations bar. The courts of appeals have taken differing approaches to the question of remedy and they provide some guidance. The First and Eighth Circuits have ruled that the district court must set aside the forfeiture and either order return of the seized property or direct the government to institute judicial forfeiture proceedings. *See, e.g., Muhammed v. Drug Enforcement Agency,* 92 F.3d 648, 654 (8th Cir.1996) (adminis-

trative forfeiture void for inadequate notice; case remanded for further proceedings on the merits); *United States v. Giraldo,* 45 F.3d 509, 512 (1st Cir.1995) (district court must set aside the declaration of forfeiture and order the Customs Service either to return the money or begin judicial forfeiture proceedings); *Glasgow v. United States Drug Enforcement Administration,* 12 F.3d 795, 799 (8th Cir.1993) (administrative forfeiture void due to defective notice; case remanded to vacate forfeiture and to order DEA either to return the property or initiate judicial forfeiture proceedings). The Fifth Circuit, in *Barrera–Montenegro v. United States,* 74 F.3d 657, 661 (5th Cir.1996), remanded the case for renewed administrative proceedings or the commencement of judicial proceedings pursuant to 19 U.S.C. § 1608, but in *Armendariz–Mata v. United States Dept. of Justice,* 82 F.3d 679, 683 (5th Cir. 1996), *cert. denied,* ─── U.S. ───, 117 S.Ct. 317, 136 L.Ed.2d 232 (1996), directed the district court to vacate the DEA's administrative forfeiture without providing further instruction or comment.

As the defendant correctly points out, it is significant that in none of these cases had the statute of limitations for filing judicial forfeiture proceedings expired[15] as it has with regard to the forfeiture of the vessel Asmara. If left with only these cases for authority, the Court might be inclined to conclude that the only outcome available is to return the vessel to the defendant.

However, in *Boero, supra,* the Second Circuit concluded that the proper remedy for defective notice is to direct the district court to consider the claim on the merits, even though the statute of limitations has expired. *Boero,* 111 F.3d at 307. Boero sought the return of $1,799.46 in currency seized from him and administratively forfeited by the DEA. He alleged, and the DEA conceded, that he had never received proper notice (the notices were sent to the wrong prison facility

and came back marked "Return to Sender"). The district court found that the DEA had failed to comply with the applicable notice requirements and directed the DEA to recommence administrative proceedings, giving Boero notice of the administrative claim procedures. The Court of Appeals vacated this part of the district court's judgment and directed the district court to consider Boero's claim on the merits. Although the court recognized that over five years had passed since the date of the initial seizure, it held that "when the government is responsible for a known claimant's inability to present a claim, through the government's disregard of its statutory obligation to give notice (or otherwise), a hearing on the merits is available in the district court." *Id.* at 304, 306.

In *United States v. Giovanelli,* 998 F.2d 116 (2d Cir.1993), the Second Circuit also found that, due to inadequate notice of an administrative forfeiture, the claim to the property should be heard on the merits. In that case, though, the court did not remand the case to the district court, but found that the record on appeal provided sufficient information for it to order that defendant's property be returned. *Id.* at 119–120.

The Court agrees with the approach adopted by the Second Circuit. Further, this resolution comports with the position taken by the Ninth Circuit in an analogous, though not identical, case. In *Marshall Leasing, Inc. v. United States,* 893 F.2d 1096, 1103 (9th Cir.1990), the Ninth Circuit, in ruling that a district court has jurisdiction over due process challenges to administrative forfeiture proceedings under 28 U.S.C. § 1331, remanded the case for an adjudication on the merits.

Therefore, in the absence of constitutionally adequate notice of the earlier administrative forfeiture of the vessel by the DEA, that action is voided and the Court will consider defendant Marolf's claim to the vessel on its merits.[16]

15. These cases do not address the statute of limitations question at all; a review of the facts of each case explains why. In each case, the opinion was written Less than five years after the date of the seizure. Thus, the five year statute of limitations had not yet elapsed in any of these cases.

16. The government's analysis of the factors set forth in *United States v. $8,850.00 U.S. Currency,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) to determine whether the government's delay in pursuing a forfeiture violated due process is thus irrelevant, as is their argument that only nominal damages are allowed for a due process violation.

### G. Was the Forfeiture of the Vessel Asmara Justified on the Merits?

The burden of proof in a forfeiture action under 21 U.S.C. § 881 is controlled by 19 U.S.C. § 1615, which provides in part that "[i]n all suits or actions ... brought for the forfeiture of any vessel ... where the property is claimed by any person, the burden of proof shall lie upon such claimant; ... Provided, That. probable cause shall be first shown for the institution of such suit or action ..."[17] A claimant may defend against a forfeiture of its property by refuting the government's showing of probable cause or presenting affirmative evidence, and proving, by a preponderance of the evidence, that the vessel was not used for the illegal purpose. *United States v. One 56–Foot Motor Yacht Named the Tahuna*, 702 F.2d 1276 (9th Cir. 1983).

It is clear that in this case defendant Marolf is unable to demonstrate either. The question of whether or not the government has met its initial burden establishing probable cause to seize the vessel has already been determined by the Court and affirmed by the Court of Appeals: "Law enforcement personnel clearly had probable cause to believe that the Asmara had been used to transport the marijuana ..." *United States v. Lingenfelter*, 997 F.2d 632, 640 (9th Cir.1993).

Once the government has shown probable cause to believe that a vessel was involved in transporting illegal substances, the burden then shifts to the claimant to show that the vessel was not involved in the illegal activity. 19 U.S.C. § 1615. Defendant Marolf has failed to offer any reason why the vessel is not subject to forfeiture. "When an owner of a vessel introduces no evidence to prove that the vessel was not used for an illegal purpose, the government may obtain forfeiture solely upon the basis of its showing of probable cause." *One 56–Foot Motor Yacht*, 702 F.2d at 1287.

More importantly, defendant Marolf has admitted all the facts necessary to justify the forfeiture when he pleaded guilty to the First Superseding information. Part of the factual basis for his plea agreement was that he was the captain of the vessel which transported the marijuana into the United States illegally. Plaintiff's Opposition, Ford Declaration, Exhibits A (First Superseding Information) and B (Plea Agreement). On the merits then, the forfeiture of the vessel Asmara must stand. The defendant's motion for return of property is denied. Moreover, defendant's claim for attorney's fees under the Equal Justice to Access Act is denied.

## V.

### CONCLUSION

For the foregoing reasons, the Court denies defendant's motion for return of the vessel Asmara.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order on all counsel of record.

---

**17.** The Ninth Circuit upheld the constitutionality of the burden-shifting. provisions of 19 U.S.C. § 1615 in *United States v. One 1970 Pontiac GTO 2–Door Hardtop*, 529 F.2d 65 (9th Cir.1976). In recent dictum, the Ninth Circuit has strongly questioned the validity of that decision. *United States v. $49,576.00 U.S. Currency*, 116 F.3d 425, 428 (9th Cir. 1997) ("... our rationale for rejecting the due process challenge in *One 1970 Pontiac GTO* is now somewhat suspect"). However, in the absence of a determination otherwise, the district court is bound to follow *One 1970 Pontiac GTO*.